## HARDIN-WYANDOT LIGHTING COMPANY *v.* VILLAGE OF UPPER SANDUSKY.

### ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 10.   Argued October 13, 1919.—Decided December 15, 1919.

The law of Ohio providing that the mode of use of village streets by electric light and power companies should be determined by the probate court if a company and village authorities could not agree, was amended so as to leave the control of the matter with the municipal authorities alone and to forbid the erection of poles and wires without their consent. *Held,* that the amendment was within the police power; and that a company whose plant was constructed and operated before the amendment under authority of a village ordinance granting it the right to use the streets, but which, without the consent of the village, after the amendment was passed, removed its poles and wires used for street lighting, had no ground to complain that its franchise contract was impaired by the amendment, and its property taken without due process, because under it the poles and wires thus removed could not be replaced, nor the system otherwise extended in the streets, without first obtaining the consent of the village authorities. P. 176.

The validity of an ordinance purporting to repeal an earlier franchise ordinance cannot be considered under the contract clause in a case from a state court decided independently of the later ordinance and without giving it any effect. P. 178.

93 Ohio St. 428, affirmed.

THE case is stated in the opinion.

Mr. H. T. Mathers, with whom Mr. Thomas M. Kirby was on the briefs, for plaintiff in error.

Mr. W. R. Hare for defendant in error.

MR. JUSTICE CLARKE delivered the opinion of the court.

In 1889 the Council of the Village of Upper Sandusky, Ohio, enacted an ordinance, authorizing an electric light and power company, and its assigns, to use the streets of the village for the purpose of erecting and operating electric light wires for the distribution of electric light and power. The ordinance declared that: "The privilege hereby granted" should entitle the company "to manufacture, sell and distribute light and power by means of electricity to the citizens of Upper Sandusky, Ohio, for public and private uses."

The grantee, accepting the franchise, constructed a generating plant, erected poles, wires and lamps, and until the year 1912 lighted the streets of the village and sold current to private consumers. In that year the plant and franchise were purchased by the plaintiff in error, hereinafter referred to as the Company, which continued to light the streets until the contract which its predecessor had with the village expired. Upon the expiration of that contract the parties entered upon negotiations for a new one, but, failing to agree, the company in October, 1913, removed all of its street lights and took down its poles and

wires used for such lighting, but continued its commercial business.

In about a year after the company ceased· to light the village streets this action was commenced by the filing of a petition by the village which, averring the·facts we have stated, further alleged that prior to the removal of the street lighting appliances the village had submitted to the company a schedule of fair prices which it was able·and willing to pay for street lighting and which it was·willing to authorize the company to charge for commercial lighting and for power, but this was rejected; that by dismantling its street lighting system the company had rendered itself wholly unable to furnish any light whatever for the purpose of public lighting; that, without the consent of the village, it·was threatening to place new poles and wires in the streets "to further advance its private interests;" that it had forfeited all rights in the streets, and that it was not possible for the village and company to agree upon terms for future lighting.

The prayer was that the company be enjoined from erecting additional poles, that its franchise be declared forfeited and that it be required to remove all of its equipment from the public streets.

The trial court dismissed the petition, but on appeal the Court of Appeals enjoined the company from erecting poles, wires or lamps in the streets "until the consent of said village shall have been obtained." This decree was affirmed by the Supreme Court of Ohio in the judgment we are reviewing.

· In its opinion the Supreme Court held that there was no bill of exceptions or properly authenticated finding of facts before it and that therefore the case must be decided upon the assumption that all of the allegations of the petition were sustained by the evidence; that at the time the ordinance of 1889 was passed and accepted, the applicable state statute provided that the "mode" of use of

the streets "shall be such as shall be agreed upon between the municipal authorities of the . . . village and the company; and, if they cannot agree," "the probate court of the county . . . shall direct" what the mode of use shall be, Rev. Stats. (1880), § 3471a; 84 O. L. 7, and Rev. Stats., § 3461; and that by an act of the legislature passed in 1896, seven years after the date of the village ordinance, the state law was amended into the form which continued to the time of trial, providing that "in order to subject the same to municipal control alone, no person or company shall place, string, construct or maintain any line, wire fixture or appliance of any kind for conducting electricity for lighting, heating or power purposes through any street, . . . without the consent of such municipality." (92 O. L. 204.)

This amended law of 1896 is made the basis of the only contention in the case which is sufficiently substantial for special notice, viz., that by it the obligation was impaired of the contract which the company had with the State and village, arising from its acceptance of the ordinance of 1889, and that it was thereby deprived of its property without due process of law.

As we have seen, when the ordinance of 1889 was passed the statute then in force provided that the "mode" in which the streets could be used for electric lighting and power appliances must be agreed upon between the village and the company, but that if they failed to agree it must be determined by the Probate Court, and the amendment, now claimed to be unconstitutional, consisted simply in giving to the municipality the exclusive control over the erection of any such appliances in the streets instead of the prior qualified control. In this case the original "mode" of use was determined by agreement without action by the Probate Court.

The prayer of the petition was that because of the dismantling of the street lighting plant and of its refusal to

agree to reasonable rates for the future, all rights of the company in the streets should be declared forfeited and that it should be ordered to remove from them all of its constructions, but the decree of the Court of Appeals, affirmed by the Supreme Court, went to the extent, only, of restraining the company from erecting any poles and wires in the streets "until the consent of said village shall have been obtained." There was nothing in the decree affecting the maintenance or renewal of such poles and wires as were in use for private lighting, when the case was commenced, and that this omission was of deliberate purpose appears from the fact that both courts held that the state statutes in force at the time the grant became effective, and the form of the proceeding, were such, that a decree annulling such rights as the company had then retained in the streets could not properly be entered in the cause. On this point the Supreme Court said:

"In this posture of the case, while in view of the statutory provisions which were in force at the inception of the enterprise the village would not be entitled to annul the company's rights, still, by reason of the facts stated above and the voluntary abandonment by the company of its rights and privileges to the extent set forth, it cannot now return and repossess itself of such rights as it abandoned without the consent of the village in accordance with existing law."

From this state of the record we conclude that the state Supreme Court did not intend to deal with the right of the company to maintain, repair or replace such poles and wires as it was using for commercial lighting when the case was commenced, but that its injunction was intended to prohibit restoring of the street lighting poles and wires which had been taken down and all new additional construction "until the consent of said village shall have been obtained," and so restrained its judgment will be affirmed, based, as it is, upon the statute of 1896, which the court

holds, upon abundant reason and authority, was passed in a reasonable exercise of the police power of the State.

This act was a general one, applicable to all electric lighting companies then operating, or which might thereafter operate, in the State, and all that it did was to give to the municipal authorities complete control over the placing in the streets of poles and wires for conducting electricity for lighting and power purposes, instead of the like control which they had when the franchise was granted, but subject to resort to the Probate Court in case of disagreement with the company as to the "mode" of using the streets.

We cannot doubt that the danger to life and property from wires carrying high tension electric current through village streets is so great that the subject is a proper one for regulation by the exercise of the police power and very certainly the authorities of the municipality immediately interested in the safety and welfare of its citizens are a proper agency to have charge of such regulation. Any modification of its rights which the company may suffer from this law passed in a reasonable exercise of the police power does not constitute an impairing of the obligation of its contract with the State or village and is not a taking of its property without due process of law within the meaning of the constitutional prohibition. *Northern Pacific Ry. Co.* v. *Puget Sound & Willapa Harbor Ry. Co.*, 250 U. S. 332, and cases cited.

Of the contention that if an ordinance passed in 1915 by the village, repealing the ordinance of 1889, were given effect it would result in impairing the obligation of the contract, it is enough to say that it first appears in a supplemental answer filed in the Court of Appeals, and the case, as we have seen, was disposed of on the assumption that all of the allegations of the petition were sustained by the evidence. No effect whatever was given to that ordinance, either by the Court of Appeals or by the Su-

preme Court, but each reached the conclusion we are reviewing independently of, and without reference to it. *Cross Lake Shooting & Fishing Club* v. *Louisiana,* 224 U. S. 632, 639; *Long Sault Development Co.* v. *Call,* 242 U. S. 272, 277.

It results that, since the change of law complained of did not impair any federal constitutional right of the plaintiff in error, the judgment of the Supreme Court of Ohio, restrained to the scope of its opinion, as we have interpreted it, must be

*Affirmed.*

MR. JUSTICE DAY did not participate in the discussion or decision of this case.