## INCORPORATED TOWN OF HEMPSTEAD ET AL V. GULF STATES UTILITIES COMPANY.

No. A-1167. Decided November 12, 1947.
Rehearing overruled December 31, 1947.
(206 S. W., 2d Series, 227.)

*Vinson, Elkins, Weems & Francis* and *Victor W. Bouldin,* all of Houston, and *W. H. Betts,* of Hempstead, for petitioners.

252

*Baker, Botts, Andrews & Walne,* of Houston, *Pitts & Liles,* of Conroe, and *Orgain, Bell & Tucker,* of Beaumont, for respondent.

MR. JUSTICE SIMPSON delivered the opinion of the Court.

Gulf States Utilities Company sued the Incorporated Town of Hempstead to enjoin it from enforcing an ordinance requiring the company to remove its electric power lines and poles from the town's streets and alleys. The town by cross-action sought a decree ordering the company to remove its lines and poles from the public ways of. the municipality. Upon a trial before the court without a jury, judgment was entered against the company and in favor of the town. The Court of Civil Appeals reversed the judgment below and rendered judgment for the company, permanently enjoining the town from enforcing the questioned ordinance and from interfering with the exercise by the company of "the rights herein held to have been vested in it over the streets and public ways of the town." 198 S. W. (2d) 620, 624.

The original Town of Hempstead was incorporated in 1856 but that incorporation was dissolved in 1899. It was reincorporated in 1935. Gulf States Utilities Company obtained a fifty-year franchise from the commissioners' court of Waller County on October 3, 1927, purporting to grant it the privilege of

erecting and maintaining its lines along and across the streets and alleys of the then unincorporated town of Hempstead. Two similar franchises which had previously been granted to others also passed into the hands of the company. In reliance upon those grants, the company equipped itself at a substantial expense to serve the Hempstead area, and since 1930 has been continually selling electric power and incidental services to the inhabitants of Hempstead and its environs. Since the town's incorporation in 1935, the company, with the town's acquiescence, has erected and maintained its poles and lines along the public ways; it has paid the town street rentals in compliance with a town ordinance; it has complied with a rate ordinance passed by the town in 1941; it has made improvements and extensions along the town's streets and alleys with the town's permission, which it had secured under the terms of an ordinance of 1944; it has paid annually ad valorem taxes which the town had levied and assessed; it has sold the town electric current for public lighting and the operation of the town's water works. It has acquired no right of way within the town's municipal limits by condemnation, but has obtained two private easements extending 120 feet along one block and 75 feet along another.

Both the management of the company and the officials of the town had been assuming until the decision in State of Texas ex rel. City of Jasper v. Gulf States Utilities Company, 144 Texas 184, 189 S. W. (2d) 693, that the county franchises held by the company were valid. The company had never applied to the town for a franchise to use the public ways of Hempstead for the prosecution of its business, nor had the town ever extended to the company for its acceptance a formal franchise granting the right to such a user. Some three months after the judgment in the City of Jasper case became final, the town council passed the ordinance here under attack.

Among other contentions, the town urges that at all times since its incorporation the use of its public ways by the company was at the town's sufferance and that this permissive use was validly terminated by the ordinance of January 28, 1946. It also contends that the acts and conduct of the town in relation to the company should not be construed as an implied grant of a franchise to the company nor to vest in the company any continuing right to the use of the public ways of the town for the operation of an electric distribution system. On the other hand, the company argues that by virtue of Articles 1435 and 1436, Revised Statutes, 1925, it had a grant from the State to use the streets and alleys of the unincorporated community of Hempstead and

that the subsequent incorporation of the town did not require the company to obtain the town's consent to continue the use of the public ways in connection with the company's operations. But, the company urges, if consent were required, the acts and conduct of the town must in law be held to comprise that consent. These contentions were presented in the Court of Civil Appeals, which sustained the company's position. With this we cannot agree.

The company plausibly suggests that Article 1435 and 1436 were enacted in 1911 to ameliorate the hardships arising from the holding in Jacksonville Ice & Electric Co. v. Moses, 63 Texas Civ. App. 496, 134 S. W. 379 (error refused), where a charged wire suspended by the electric company across a public road outside the city limits of Jacksonville had fallen and caused the injury out of which the action arose. Apparently this wire had been extended across the highway without authority having been obtained from anyone. "If this be true," the court said, "then the appellant was maintaining a nuisance and was responsible absolutely, and without reference to negligence, for whatever injuries were caused by the maintenance of such an obstruction." 134 S. W. 379, 386.

By Article 1435 extensive rights were given electric current power corporations to engage in business "at and between different points in this State," and to own lands, rights of way, improvements, and the like.

By Article 1436 it was provided that:

"Such corporation shall have the right and power to enter upon, condemn and appropriate the lands, right of way, easements and property of any person or corporation, and shall have the right to erect its lines over and across any public road, railroad, railroad right of way, interruban railroad, street railroad, canal or stream in this State, any street or alley of any incorporated city or town in this State with the consent and under the direction of the governing body of such city or town. Such lines shall be constructed upon suitable poles in the most approved manner and maintained at a height above the ground of at least twenty-two feet; or pipes may be placed under the ground, as the exigencies of the case may require."

█ It is manifest from the language employed that what had been denounced as a nuisance in the Jacksonville case, namely, extending electric wires across a public road, was legalized,

and electric power corporations might lawfully suspend their wires "over and across" public ways, conformably, of course, to all the provisions of the article. Significantly, these corporations were given the extraordinary power of eminent domain, and in connection with extending electric transmission lines along rights of way which were empowered to acquire either by purchase or condemnation, these companies might, when they came to "any public road, railroad, railroad r'   ': of way, interurban railroad, street railroad, c⌐··al or stre·   .a this State," erect their lines "over and acro; ɔ" them. Aɪ. . .ᵢf, for instance, permission to cross a railroad right of way should be refused, electric power corporations might effectively resort to condemnation. In rural areas and unincorporated villages and towns, the companies might not only prosecute the business of intercity·or long distance transmission of electric current by wire, but "at and between" any points they served they might sell electricity and maintain all needed facilities. But in transacting this business it was plainly contemplated that they should acquire their own land, easements, and rights of way. They were nowhere given the privilege of employing public ways in their operations except only that they might, as the statute said, erect their lines "over and across" highways, streets and alleys, where otherwise their power lines would have to stop if they could not cross. And in incorporated cities or towns, it was only with the consent and under the direction of the governing body of the municipality that these lines might be erected "over and across" public ways.

■ The intention to limit the rights of these companies to extending their lines "across" public ways and not longitudinally appears plain. It must be regarded as significant that long distance telephone and telegraph companies, which do have the right to erect their lines *along and upon* public ways, were given that right by the legislature in clear language. City of Brownwood v. Brown Telegraph & Telephone Co., 106 Texas 114, 157 S. W. 1163; Fleming v. Houston Lighting & Power Co., 135 Texas 463, 138 S. W. (2d) 520, 143 S. W. (2d) 923. These companies are empowered by a statute which was the law long before Articles 1435 and 1436 were enacted, "to set their poles; piers, abutments, wires and other fixtures *along, upon and across* any of the public roads, streets and waters of this State, in such manner as not to incommode the public in the use of such roads, streets and waters." Art. 1416, R. S. (Emphasis supplied.)

If the lawmakers had meant to grant electric power cor-

porations the right to place their "poles, piers, abutments, wires and other fixtures" *along* and *upon* as well as *across* the public ways of this State, it stands to reason that they would have employed suitable and effiicacious language to that end, just as had been done in Article 1416.

In passing, it is interesting to note that hazards incident to the *running* of electric power lines along public streets which do not obtain in the case of telephone companies and their lines were commented upon in Hardin-Wyandot Lighting Company v. Village of Upper Sandusky, 93 Ohio St. 428, 440, 113 N. E. 402, 405 (aff. 251 U. S. 173, 40 S. Ct. 104, 64 L. Ed. 210), and were ascribed as "substantial reasons why the local authority should be vested with larger power to deal with a matter of such a nature (a system of electric lighting), and which comes in such close contact with its own people, than is necessary with reference to telegraphs and telephones."

■ The generally accepted principle that the words of a grant from the public must be taken most strongly against the grantee is also of assistance in appraising the rights the company has obtained under the legislation here under consideration. (Whether the rights asserted by the company be denominated a grant, a franchise, or a privilege is not presently of any importance. The principle involved applies equally to all grants from the public in favor of persons or private concerns.) Tersely this principle is stated as follows: "The general rule is that a grant of a franchise is to be construed in favor of the public, and, if the language used is ambiguous, the grant is to be construed in favor of the grantor and against the grantee." 37 C. J. S., Franchises, sec. 21 b. "The general rule is that nothing passes by implication by the grant of a franchise, except what may be necessary to give effect to the obvious intent of the grant." 37 C. J. S., Franchises, sec. 21 c. Another well-put statement of it is in 23 Am. Jur., Franchises, sec. 16:

"While it is the accepted doctrine that all grants are to be construed according to the intention of the parties, yet there are certain general rules of construction by the light of which such contracts are to be examined. These rules are well settled by numerous authorities. One is that in all grants by the government to individuals or corporations, of rights, privileges, and franchises, the words are to be taken most strongly against the grantee, contrary to the rule applicable to the grant from one individual to another. One who claims a franchise or privilege in derogation of the common rights of the public must prove his title thereto by a grant clearly and defi-

nitely expressed, and cannot enlarge it by equivocal or doubtful provisions or probable inferences."

Also see Victoria County v. Victoria Bridge Company, 68 Texas 62, 4 S. W. 140; Galveston Wharf Co. v. Gulf, C. & S. F. Ry. Co., 81 Texas 494, 17 S. W. 57; Russell v. Sebastian, 233 U. S. 195, 34 S. Ct. 517, 58 L. Ed. 912, L. R. A. 1918E 882.

It is at once apparent that to sustain the company's construction of Articles 1435 and 1436, words the measures do not contain would have to be imported into them, and by means the words so added a substantial enlargement of the privileges extended to electric power corporations by the articles under consideration would be accomplished. According to the company's contentions, not only would these concerns have the right to cross over public ways, but also, by language neither contained in the legislation nor fairly to be implied in construing it, they would have the right to utilize at will the public roads of the State outside of incorporated communities by installing their poles, abutments, wires and other equipment *on, along and upon* these roads, subject only to the provision that they suspend their wires more than twenty-two feet from the ground. These contentions cannot be sustained.

We conclude that as respects poles, lines and other facilities which were being maintained "in, on and along" (to employ the language used in the trial court's decree) the streets and alleys of the town of Hempstead, the company was not making a lawful use of those public ways before the town's incorporation into a municipality.

Having reached the conclusions we have expressed, it follows that the town is not undertaking by the act of organizing itself into a municipality to dispossess the company of rights previously obtained under the general statutes. Accordingly, the authorities cited by the company, such as City of Prichard v. Alabama Power Co., 234 Ala. 339, 175 So. 294, holding in effect that vested rights held by power companies could not ordinarily be superseded by the subsequent incorporation of a city, have no application here.

Now since the company in the prosecution of its business was not lawfully occupying the public ways of Hempstead at the time of the town's incorporation, it follows that the company's continued use of those public ways, under all the facts in evidence, was permissive only and at the sufference of the

goverening body of the town. But it is argued the acts and conduct of the town since its incorporation do amount to a consent to the use of the public ways, and if the town's consent to that use be required, it has in this fashion been obtained. The contentions the company advances here were in much the same form urged and overruled in the City of Jasper case. There, the Jasper Electric Company had been serving the community of Jasper before its incorporation into a municipality. Soon after that incorporation the Jasper Electric Company sold its properties to Gulf States Utilities Company, which continued doing business in the newly created municipality, assuming to operate, as had its predecessor, under a franchise granted by the commissioners' court; it had, after the town's incorporation, furnished power to the town under contract, paid the town ad valorem and occupation taxes and street rentals, made extensive and substantial improvements and additions within the town, and used the municipal streets, alleys and public ways with the town's acquiescence. (See 185 S. W. (2d) 501 and 144 Texas 184, 189 S. W. (2d) 693.) Under such a state of facts, this court announced in the Jasper case that:

"We are not holding that under no circumstances can a municipality be estopped from asserting the invalidity of a franchise, but do hold that the facts do not bring this case within such a holding. Whatever license, if any, under the facts, flowed from the dealing of the city council with the company for it to continue using the streets and alleys, were revokable and terminable within a reasonable time, such as the city gave the company by the terms of the ordinance in question. The dealings present no basis for estoppel. (Citing authorities). The company was charged with knowledge of the following provisions of article 1016, R. C. S., which relate to the powers of cities of the class to which the city of Jasper belonged: 'Any incorporated city or town containing not more than five thousand population in this State shall have the exclusive control and power over the streets, alleys, and public grounds and highways of the city, and to abate and remove encroachments or obstructions thereon: to open, alter, widen, extend, establish, regulate, grade, clean and otherwise improve said streets, to put drains or sewers therein, and prevent incumbering thereof in any manner and to protect same from encroachment or injury; * * *.'

"The company was charged with knowledge also of the provisions of article 1436, relating to electric current and power corporations, which reads: 'Such corporations shall have the right * * * to erect its lines over and across * * * any street or

alley of any incorporated city or town in this State *with the consent* and under the direction of the governing body of such city or town. * * *.' (Italics ours.)" 144 Texas 184, 192, 189 S. W. (2d) 693, 697.

It must be owned that we have been greatly troubled by the difficulties presented and the hardships involved in this case, but we feel constrained, upon the considerations to which we have alluded, to hold that after Hempstead was incorporated the company's use of the public ways of the town was at the town's sufferance, and that its acquiescence in that use might be terminated upon reasonable notice.

The district judge concluded, it would appear, that 90 days after his judgment became final would comprise a reasonable time for the company to remove its poles and lines from the town's public ways, and so provided in the decree. The objection which the town presents in its brief to the judge's staying the issuance of a writ of injunction for that time is overruled.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

Opinion delivered November 12, 1947.

Rehearing overruled December 31, 1947.