## WEST TEXAS UTILITIES CO. v. CITY OF MASON.

No. 9870.

Court of Civil Appeals of Texas. Austin.

April 12, 1950.

Rehearing Denied May 3, 1950.

Scott Snodgrass, of San Angelo, Roscoe Runge, of Mason, E. L. Harwell (of Wagstaff, Harwell, Wagstaff & Alvis), of Abilene, Everett Looney (of Looney, Clark & Moorhead), of Austin, for appellant.

R. E. Lee, of Mason, for appellee.

HUGHES, Justice.

The City of Mason sued the West Texas Utilities Company for a mandatory injunction to compel compliance with an ordinance of the City requiring the Company " * * * to remove all poles, wires, transformers, conduits, and other property used in said public utility business and situated in, upon, under, across or along the public streets and alleys within said town * * *."

After a non-jury trial judgment was rendered for the City ordering the Company to " * * * remove its poles, wires, conduits, transformers and other properties from the streets and alleys within the incorporate limits of the Incorporated City of Mason * * *." This judgment has been superseded.

Appellant Company is a Texas corporation engaged in the business of generating, transmitting, distributing and selling electric energy.

In 1925 appellant was granted a franchise by the Commissioners Court of Mason County authorizing it to operate and maintain its lines for conducting electric current and supplying light, heat and power to cities and towns in Mason County, and giving it an easement over and along public county roads and highways, and upon and across streets, alleys, sidewalks and public grounds of unincorporated towns, such franchise to run for a period of 50 years from October 13, 1925. This franchise was accepted and lines were built into Mason by the Company in 1926.

.. Mason, a city now having about 2,300 inhabitants, was incorporated November 13, 1945.

In 1948 the City of Mason constructed its own electric power system.

On March 8, 1949, the City of Mason passed the ordinance requiring appellant to remove its installations from the alleys and streets within its corporate limits.

The background of this suit is to be found in the decisions of the Supreme Court in the cases of State ex rel. City of Jasper v. Gulf States Utilities Company, 144 Tex. 184, 189 S.W.2d 693; Incorporated Town of Hempstead v. Gulf States Utilities Company, 146 Tex. 250, 206 S.W.2d 227.

In those cases it was held that a County Commissioners Court had no authority to grant a utility company a franchise such as that granted appellant by the Commissioners Court of Mason County, and that such a franchise and improvements made and business conducted thereunder could not form a basis for a valid objection to enforcement of an ordinance, similar to the one adopted by the City of Mason, passed by a city or town incorporated subsequent to the grant of such franchise or operations thereunder.

Unless the law of these two cases has been altered or suspended by an Act of the 51st Legislature, then, in the main at least, the judgment of the trial court must be affirmed. The Act in question is H. B. 393, Regular Session 51st Legislature, Acts 1949, c. 228, p. 427. This Act is carried in Vernon's Annotated Civil Statutes as Article 1436a.

We attach no importance to the number or place given by Vernon's to this Act.

On the day following enactment of the ordinance by the City of Mason the Hon. Beauford H. Jester, Governor of Texas, submitted a special emergency message [1] to the Legislature of Texas, then in session, in which he called attention to the situation created by the decisions of the Supreme Court in the Hempstead and Jasper cases and stated that, "I believe it is important that we solve this pressing problem as soon as possible in order that

---

1. "Austin, Texas, March 9, 1949.

"To the Members of the 51st Legislature:

"The continued expansion of facilities for the distribution of electric light and power in the rural areas of Texas is of great importance. All of us know that many electric lines have been built along the right-of-way of state highways and county roads. Many thousands of miles of lines have been so constructed and built by rural electric cooperatives and other utilities engaged in the distribution of electric power. These lines were built in good faith under franchises granted by the various Commissioners' Courts of Texas, and they provide the means of getting electric light and power to many small towns and rural communities.

"In what are known as the Hempstead and Jasper cases, the Supreme Court of Texas has held that the Commissioners' Courts had no authority to grant such franchises. The result of this decision is that all such lines constructed under county franchises are now illegally on the right-of-way of such roads and highways. The expense of moving them would be prohibitive and in many rural areas and unincorporated towns the peo-

ple cannot enjoy the benefits of electric service unless the lines are built along the edge of the right-of-way of highways and county roads. Furthermore, I am informed by responsible representatives of the rural electric cooperatives that under the present circumstances it is most difficult, if not impossible, to refinance existing loans or to acquire new money for further expansion.

"I believe it is important that we solve this pressing problem as soon as possible in order that those engaged in the task of making electric service available to all the rural homes in this state may be able to legally operate such existing lines, and continue the program of carrying electric light and power to communities where such service is not now available.

"It is my understanding that Senate Bill No. 205 and House Bill No. 393 will effectuate the desired purpose in this connection, and I hereby submit these bills as emergency matters under the authority of Section 5 of Article III of the Constitution of Texas.

"Respectfully submitted,
"Beauford H. Jester,
"Governor of Texas."

those engaged in the task of making electric service available to all the rural homes in this state may be able to legally operate such existing lines, * * *."

The result of this message was the passage of H. B. 393, the vote in the House of Representatives being 114 for and 3 against, and the Senate voting 27 for and 1 against. That the House and Senate concurred in the reasons assigned by the Governor as necessitating the legislation is shown by the following statement from the emergency clause of the Act: "The fact that since the beginning of the electric power and light business in this State the distribution of electric energy to areas outside of the limits of incorporated cities has been based on the legal concept that the Commissioners Courts of this State had the authority to grant franchises for the use of the roads and highways; and the further fact that the Supreme Court has held that Commissioners Courts have no such authority; * * *." Section 4.

The body of the Act is divided into two sections. The first section deals with power corporations generally and the second section (1a) deals with municipal corporations which are in the power business. Our concern is with Section 1 only.

Appellant's principal contention on this appeal is that, under Section 1 of H. B. 393, it had and has the right to maintain its present installations along, across and upon the streets and alleys of the City of Mason without consent of the City until the expiration of ten years from November 13, 1945, the date on which Mason was incorporated.

This contention is based upon the following provision of Section 1 of the Act: " * * * In the event a State highway or county road on which lines have been built passes through or into an unincorporated city or town, which thereafter becomes an incorporated city or town, the corporation owning such lines shall continue to have the right to build, maintain and operate its lines along, across, upon and over the roads and streets within the corporate limits of such city or town for a period of ten (10) years from and after the date of such incorporation, but there-

after only with the consent of the governing body of such city or town, * * *."

Appellee, citing 9 Tex.Jur., p. 540, and Cooley on Constitutional Limitations, 7th Ed., p. 529, for the rule of statutory construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively, resists the interpretation placed upon this statute by appellant. The words, "which thereafter *becomes* an incorporated city or town," are seized upon and construed by appellee as conclusively demonstrating a legislative intent that no relief from the "pressing problems" confronting electric power corporations as a result of the Supreme Court decisions was to be given except in cases where incorporation of an unincorporated town was effected subsequent to the enactment of H. B. 393.

In other words appellee would ascribe to the Legislature an intent not to come to the aid of power companies who were actually and presently in trouble as a result of the Jasper and Hempstead cases, but to provide relief for those companies which might or might not need it in the future.

This limited construction of the Act seems, to us, entirely out of harmony with the purpose of the Act. Certainly it would not constitute a solution to the "pressing problem" which the Governor, in an emergency message, requested the Legislature to solve.

The City's construction of the Act would authorize a town incorporated one day before the effective date of the Act to oust a power company from its streets and alleys without delay, whereas a town incorporated one day after the effective date of the Act would be required to wait ten years before it could avail itself of the same right. No reason is apparent for such arbitrary treatment by the Legislature of those who, if entitled to relief at all, are entitled to the same measure of relief.

The word "becomes" as used in that portion of the Act above set out means to pass from one state to another or to enter some condition by a change from another condition; the transition here being from

an unincorporated to an incorporated status. If this meaning of the word is inserted in the Act it might well read, "which thereafter changes from an unincorporated city or town into an incorporated city or town."

We believe that the important word in the clause of the Act under discussion is the word "thereafter" and not the word "becomes." "Thereafter" refers to the event of power lines having been built on roads passing through unincorporated towns. If this occurs and such town later, afterward, subsequently, or "thereafter" incorporates itself then the 10-year suspense period commences. This is our understanding of the language actually used by the Legislature.

If, however, grammatical rules are at variance with our interpretation of the words "thereafter becomes," then such rules will not be applied when to do so would violate the manifest intention of the Legislature. 39 Tex.Jur., p. 178. Also, the rule is that " * * * whenever the legislative purpose is ascertained, the significance of words used may be restricted or enlarged in order to effectuate that purpose and to give the act the meaning which the lawmakers manifestly intended." Texas & N. O. R. Co. v. Railroad Commission, 145 Tex. 541, 200 S.W.2d 626, 629.

In ascertaining the intention of the Legislature in the premises which is the ultimate aim of courts when called upon to construe statutes, we are entitled to consider and have considered "the history of the subject-matter involved, the end to be attained, the mischief to be remedied, and the purposes to be accomplished." Magnolia Petroleum Co. v. Walker, 125 Tex. 430, 83 S.W.2d 929, 934. This study has convinced us that the intention of the Legislature in passing H.B. ?03 was to grant relief to power companies, such as appellant, under circumstances described in the Act, and to give to each such company ten years from the incorporation of such city or town within which to make its peace with the city or town, or to be ousted therefrom, and this without regard to the incorporation of city or town being before or after the enactment or effective date of the Act.

We add only that, in our opinion, H.B. 393 is, in essence, a curative statute and subject to a liberal construction in furtherance of its objective. 39 Tex.Jur. p. 145.

In accordance with these views the judgment of the trial court is reversed and judgment is here rendered that appellee recover nothing by its suit. This judgment is without prejudice to the rights of appellee upon termination of the 10-year period prescribed by the statute.

Reversed and rendered.