**James F. MILLER et al., Appellants,**

**v.**

**RAILROAD COMMISSION of Texas et al., Appellees.**

**No. 386.**

Court of Civil Appeals of Texas.

Tyler.

May 2, 1968.

Rehearing Denied May 23, 1968.

McCulloch, Ray, Trotti & Hemphill, Dallas, Ross H. Hemphill & Thomas W. Oliver, Dallas, of counsel, for appellants.

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., A. J. Carubbi, Jr., Executive Asst. Atty. Gen., Houghton Brownlee, Jr., Rex H. White, Jr., Linward Shivers, Asst. Attys. Gen., Austin, for appellee, Railroad Commission.

Vinson, Elkins, Weems & Searls, V. R. Davis, Houston, for appellee, Union Producing Co.

Lawrence Jack Moore, Houston, for appellee, Texaco, Inc., and others.

William R. Dotson, Dallas, for appellee, Atlantic Richfield.

DUNAGAN, Chief Justice.

This suit involves an appeal from the 8th District Court of Rains County dismissing for lack of jurisdiction appellants' appeal from an order of the Railroad Commission of Texas denying their application to pool their four (4) acre unit into an existing gas unit.

Appellants, James F. Miller and Burton M. Brown, lessors and owners of a four (4) acre oil, gas and mineral lease in Rains County, Texas, filed an application with the Railroad Commission of Texas to have the above mentioned land pooled in the Texaco, Inc. #1, J. J. Wade Gas Unit in the Dunbar Field, Rains County, Texas, under the authority of the new Mineral Interest Pooling Act, Art. 6008c.[1]

This suit is the result of a Railroad Commission order denying appellants' application to pool their four (4) acre tract with the J. J. Wade Gas Unit No. 1 on the basis of a finding that the applicants had failed to show that the four (4) acre tract of the applicants reasonably appears to lie within the productive limits of the reservoir.

From this decision of the Commission, an appeal was taken to the District Court of Rains County, where the land is located, pursuant to the provisions of Sec. 2(g) of Art. 6008c. Appellees filed pleas to the jurisdiction of the District Court of Rains County, urging that the proper courts to hear this type of administrative appeal are the District Courts of Travis County. Following a hearing thereon, the court sustained the pleas of jurisdiction filed by appellees and dismissed appellants' appeal for the want of jurisdiction. The appellants excepted to said ruling and gave notice of appeal.

It is appellants' contention as asserted under their first point of error that even though the language of Section 2(g), Article 6008c, uses the word "effecting," it was the intention of the Legislature that any party at interest aggrieved by an order of the Commission under the "Mineral Pooling Act" is entitled to appeal from the order of the Commission to a District Court of the county in which the land or a part thereof involved is located. They argue that this right of appeal to such District Court would not hinge upon whether the Commission's order granted or denied a pooling application.

This appeal raises a unique question of jurisdiction, which a determination thereof requires a construction of Section 2(g) of Article 6008c.

The Mineral Interest Pooling Act, in Section 2(g) [2] of Article 6008c contains special provisions under which the appeal is to the District Court of a county in which the land or any part thereof involved is located, "and not elsewhere, notwithstanding the provisions of Section 8 of Article 6049c." [3] Section 8 of Article 6049c is an

1. All references herein are to Vernon's Texas Civil Statutes unless otherwise indicated.

2. "Any person or party at interest aggrieved by an order of the Commission effecting pooling under this Act may appeal such order within 30 days to the District Court of the county in which the land or any part thereof covered by such order is located, and not elsewhere, notwithstanding the provisions of Section 8 of Article 6049c, Vernon's Civil Statutes of Texas."

3. "Any interested person affected by the conservation laws of this State relating to crude petroleum oil or natural gas, and the waste thereof, including this Act, or by any rule, regulation or order made or promulgated by the Commission thereunder, and who may be dissatisfied therewith, shall have the right to file a suit in a Court of competent jurisdiction in Travis County, Texas, and not elsewhere, against the Commission, or the members thereof, as defendants, to test the validity of said laws, rules, regulations or orders. Such suit shall be advanced for trial and be determined as expeditiously as possible and no postponement thereof or continuance shall be granted except for reasons deemed imperative by the Court. In all such trials, the burden of proof shall be upon the party complaining of such laws, rule, regulation or order; and such laws, rule, regulation or order so complained of shall be deemed prima facie valid."

older statute providing in effect that appeals from conservation orders of the Railroad Commission generally shall be to a District Court of Travis County, "and not elsewhere." There seems to be no dispute that it was intended by Section 2(g), Article 6008c, that appeals from compulsory pooling orders of the Commission would be to the county in which the land or a portion thereof involved is located. The language of Section 2(g) of the "Mineral Interest Pooling Act" refers only to "an order of the Commission *effecting* pooling" under the act, and makes no express reference to an order of the Commission denying pooling, which is the type of order involved in this case.

Appellees contend that if the Railroad Commission grants an application under Article 6008c for forced pooling, the appeal therefrom must go to a District Court of the county where the land involved is located, but that if the Railroad Commission denies such application, the appeal therefrom must be taken to a District Court of Travis County, Texas, under Section 8 of Article 6049c. More precisely, appellees contend that before the appeal of an order from the Railroad Commission can be taken to a District Court in the county where the land is located, the order of the Railroad Commission must *effect* pooling, and that the order involved here does not effect pooling. We do not agree.

■ When a unit has been created containing, for example, 160 acres, and an adjoining landowner files an application to force pool a 4-acre tract into the unit, the question before the Railroad Commission is whether or not the unit will contain 164 acres or 160 acres. If the Railroad Commission grants the application, pooling is effected. If the Commission denies the application, pooling is effected. While the application is pending, it is not known what will be the size of the unit. When the Railroad Commission acts on the application, pooling is effected regardless of whether the Railroad Commission grants or denies the application.

We think the Legislature intended that all appeals from orders of the Railroad Commission pursuant to this Act be taken to a District Court of the county in which the land is located. This is the only reasonable construction which can be placed on this statute. The parties to an appeal would be the same, regardless of what action the Railroad Commission might take. Why would the Legislature make any change from the provisions of Sec. 8 of Art. 6049c in the first place? It is apparent that this was done to make it more convenient for the operators and landowners. It would, therefore, be an unreasonable construction of the Statute to say that the Legislature intended to provide therein for a split appeal. At least it must be said that such dual methods of appeal as appellees contend are provided by Article 6008c would indeed be a radical departure from usual appellate procedure in this state. We are not aware of any such provision for appeals in any other statutes in this state. If the Legislature had intended to provide for this method of appeal from an order of the Commission under Article 6008c, we think it would have done so by the use of express language.

In Magnolia Petroleum Co. v. Walker, 125 Tex. 430, 83 S.W.2d 929, the Supreme Court of Texas said:

"No inflexible rule can be announced for the construction of statutes. However, the dominant rule to be observed is to give effect to the intention of the Legislature. Generally the intent and meaning is obtained primarily from the language of the statute. In arriving at the intent and purpose of the law, it is proper to consider the history of the subject-matter involved, the end to be attained, the mischief to be remedied, and the purposes to be accomplished. See 59 C.J. § 570, p. 958. 'Where, however, the language of the statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty devolves upon the

court of ascertaining the true meaning. If the intentions of the Legislature cannot be discovered, it is the duty of the court to give the statute a reasonable construction, consistent with the general principles of law.' 59 C.J., p. 957, § 569; * * * "

 Any statute must be construed so as to give effect to the legislative intent as the intention of the Legislature is the dominant consideration in construing a statute. Calvert v. British-American Oil Producing Company, 397 S.W.2d 839, 842 (Tex.Sup., 1966); State of Texas v. Shoppers World, Inc., 380 S.W.2d 107, 110 (Tex.Sup., 1964). In arriving at that intent, we must consider the end to be attained, the mischief to be remedied, and the purpose to be accomplished. Hollan v. State, 308 S.W.2d 122 (Tex.Civ.App., 1957, Fort Worth, writ ref., n. r. e.); West Texas Utilities Co. v. City of Mason, 229 S.W. 2d 404 (Tex.Civ.App., 1950, aff., 150 Tex. 18, 237 S.W.2d 273).

Certainly it may be said that no good reason can be advanced why the Legislature would have intended that one party involved in such a hearing appeal to one Court, and the other party to a different Court. Under the forced pooling act, a situation could well develop where both parties wanted to appeal as to different provisions of the Act. What then?

In Roby v. Hawthorne, 84 S.W.2d 1108 (Tex.Civ.App., 1935, Dallas, writ dism.), the Court said:

"To effectuate a legislative intent, words may be omitted or supplied, and, as announced in 25 R.C.L. p. 1024 § 259, 'Nothing but clear and unmistakable language will warrant a court in a construction which will produce injustice by the unequal operation of the statutes. If the Legislature manifests an intention to create a system for the government of any subject, it is the duty of the court to effectuate that intention by such a construction as will make the system consistent in all its parts and uniform in its operation. When the Legislature has clearly laid down a rule for one class of cases, it is not readily to be supposed that in its choice of words and phrases, or in the exactment of various provisions in the same act, it has prescribed a different rule for another class of cases within the same reason as the first; a construction which will avoid such senseless discriminations should be adopted where the meaning of the statute as evidenced by its language is debatable.' "

Also see Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070 (1927); Patterson v. City of Dallas, 355 S.W.2d 838, 844 (Tex. Civ.App., 1962, Dallas, writ ref., n. r. e.).

 We therefore conclude that the District Court of Rains County is vested with jurisdiction of appellants' cause of action and that the Court erred in dismissing same. The order of dismissal is reversed and the cause is remanded to the trial court for disposition on its merits.

Reversed and remanded.