COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-07-403-CV

 

FORT WORTH & WESTERN RAILROAD                                  APPELLANTS

COMPANY AND CEN-TEX RURAL


RAIL TRANSPORTATION
DISTRICT

 

                                                   V.

 

ENBRIDGE
GATHERING                                                           APPELLEE

(NE TEXAS LIQUIDS), L.P.

 

NO. 2-07-405-CV

 

FORT
WORTH & WESTERN RAILROAD                                  APPELLANTS

COMPANY AND CEN-TEX RURAL


RAIL TRANSPORTATION
DISTRICT

 

V.

 

COWTOWN
PIPELINE PARTNERS LP                                          APPELLEE

 

NO. 2-07-406-CV

 

FORT
WORTH & WESTERN RAILROAD                                  APPELLANTS

COMPANY AND CEN-TEX RURAL


RAIL TRANSPORTATION
DISTRICT

 

V.

 

WORSHAM‑STEED
GAS STORAGE, L.P.                                    APPELLEE

 

                                              ------------

 

                FROM COUNTY
COURT AT LAW OF HOOD COUNTY

 








                                              ------------

                                             OPINION

 

                                              ------------

Appellants Cen-Tex Rural Rail Transportation
District and Fort Worth & Western Railroad Company filed this interlocutory
appeal from the trial court=s orders
denying their pleas to the jurisdiction in three separate pipeline condemnation
cases brought by appellees Worsham-Steed Gas Storage, L.P., Cowtown Pipeline
Partners LP, and Enbridge Gathering (NE Texas Liquids), L.P.  The primary issue we must decide is whether
gas utilities and pipeline companies have the power to condemn rail district
property and to run pipelines under the railroads.  We hold that they do and affirm the orders of
the trial court denying appellants= pleas
to the jurisdiction.

I.    
Background








Three separate pipeline condemnation cases were
filed by appellees Worsham-Steed Gas Storage, L.P. (Worsham-Steed), Cowtown
Pipeline Partners LP (Cowtown), and Enbridge Gathering (NE Texas Liquids), L.P.
(Enbridge).  Each entity sought
acquisition of an easement for installation and maintenance of a pipeline under
railroad tracks located in Hood County that are owned by Cen-Tex Rural Rail
Transportation District (Cen-Tex), and on which Fort Worth & Western
Railroad Company (Fort Worth & Western) owns easements to conduct rail
operations.  Prior to filing the
condemnation proceedings, appellees attempted to negotiate the purchase of
permanent easements from Cen-Tex, but the parties failed to reach agreement. 

Pursuant to the Texas Property Code, the trial
court appointed a panel of special commissioners to determine appellants= damages
arising from the condemnations.[1]  After hearings in each proceeding, the
commissioners awarded damages to Cen-Tex and Fort Worth & Western arising
from the condemnations and assessed costs against appellees.

Appellants did not appear at the hearings.  Instead, they both filed pleas to the
jurisdiction in the trial court, objecting to the condemnation proceedings on
the grounds that appellees have no authority to condemn rail district property
and that the statute authorizing gas utilities to obtain easements to lay
pipelines does not authorize laying pipelines under railroads.  Appellants also complained that appellees
failed to exhaust their administrative remedies and that the condemnation
proceedings were preempted by federal law.[2]  The trial court denied the pleas, and these
consolidated appeals followed.








II.     Analysis

 

A.     Standard
of Review

We review de novo the denial of a plea to the
jurisdiction.[3]  A plea to the jurisdiction is a dilatory
plea; its purpose is to defeat a cause of action without regard to whether the
claims asserted have merit.[4]  The purpose of a dilatory plea is not to
force the plaintiff to preview the case on its merits but to establish a reason
why the merits of the plaintiff=s claims
should never be reached.[5]








When a plea to the jurisdiction challenges the
pleadings, we determine if the pleader has alleged facts that affirmatively
demonstrate the court=s jurisdiction to hear the
cause.[6]  We construe the pleadings liberally in favor
of the plaintiff and look to the pleader=s
intent.[7]  If a plea to the jurisdiction challenges the
existence of jurisdictional facts, we consider relevant evidence submitted by
the parties when necessary to resolve the jurisdictional issues raised, as the
trial court is required to do.[8]  If the evidence creates a fact question
regarding the jurisdictional issue, then the court cannot grant the plea to the
jurisdiction and the fact issue will be resolved by the fact finder.[9]  However, if the relevant evidence is
undisputed or fails to raise a fact question on the jurisdictional issue, the
trial court rules on the plea to the jurisdiction as a matter of law.[10]

B.     Exhaustion of Administrative Remedies








Appellants argue that the trial
court lacked subject matter jurisdiction over the condemnation proceedings
because appellees failed to exhaust their administrative remedies under the
Administrative Procedure Act (APA) by failing to appeal Cen-Tex=s
offered terms and rates to the Cen-Tex board and to the State Office of
Administrative Hearings (SOAH).[11]  According to appellants, only after a final
SOAH determination of the issue would appellees have been permitted to appeal
in the appropriate district court.[12]

The APA applies to the decisions of a Astate
agency,@ which
is defined by the statute as Aa state
officer, board, commission, or department with statewide jurisdiction
that makes rules or determines contested cases.@[13]  Consistent with this definition, courts have
held that the APA does not apply to administrative bodies that lack state wide
jurisdiction.[14]








Under the provisions of the Rural Rail
Transportation District Act (Rail District Act),[15]
Cen-Tex does not have statewide jurisdiction. 
Instead, the Rail District Act establishes that rail districts may be
formed only by certain counties and are limited geographically to the counties
that form them.[16]  Because Cen-Tex lacks state wide
jurisdiction, it is not a Astate
agency@ within
the meaning of the APA.  Therefore, we
hold that appellees were not required to follow APA procedures by appealing
Cen-Tex=s offer
to the SOAH before filing condemnation proceedings in the trial court.

C.     Gas Utilities Authority and Common Carrier
Authority to Condemn Property of Rural Rail Transportation Districts

 

Appellants contend that
appellees are not empowered to condemn property owned by Cen-Tex because the
Texas Utilities Code and the Texas Natural Resources Code only authorize gas
companies and common carriers to condemn the property of Aany
person or corporation,@ and, according to appellants,
Cen-Tex is neither a person nor a corporation.[17]

Section 181.004 of the utility code provides:








A gas or electric
corporation has the right and power to enter on, condemn, and appropriate the
land, right‑of‑way, easement, or other property of any person or
corporation.[18]

Similarly, section 111.019 of the natural resources code provides:

(a)  Common
carriers have the right and power of eminent domain.

(b)  In the exercise of the power of eminent
domain granted under the provisions of Subsection (a) of this section, a common
carrier may enter on and condemn the land, rights‑of‑way,
easements, and property of any person or corporation necessary for the
construction, maintenance, or operation of the common carrier pipeline.[19]

 

The Code Construction Act governs our
interpretation of the Texas Utilities Code and Texas Natural Resources Code.[20]  We are to apply its definitions when
interpreting statutes Aunless the statute or context in
which the word or phrase is used requires a different definition.@[21]








APerson@ is
defined in the Code Construction Act to include a Acorporation,
organization, government or governmental subdivision or agency, business
trust, estate, trust, partnership, association, and any other legal entity.@[22]  The Rail District Act expressly provides that
a rail district is a Apublic body and a political
subdivision of the state exercising public and essential government functions.@[23]  Thus the term Aperson@ in the
utilities and natural resources codes includes rail districts such as
Cen-Tex.  Nothing in the language of
either code, or the context in which the term Aperson@ is used
in the codes, require a different definition. 
We, therefore, hold that Cen-Tex is a Aperson@ whose
property may be condemned by a gas corporation or common carrier under section
181.004 of the utilities code and section 111.019 of the natural resources
code, respectively.[24]








D.     Gas Corporations= Right
to Place Pipelines AUnder@ Rail
District Property

Appellants argue that former section 181.005 of
the utilities code does not authorize Worsham-Steed and Cowtown to lay
pipelines under railroads.  That
section stated:

A gas corporation has the
right to lay and maintain lines over and across a public road, a
railroad, railroad right‑of‑way, an interurban railroad, a street
railroad, a canal or stream, or a municipal street or alley.[25]








In construing former section 181.005, we rely on
the plain meaning of the text unless a different meaning is supplied by
legislative definition or is apparent from context, or unless such a
construction leads to an absurd result.[26]  We may consider other matters in ascertaining
legislative intent, including former statutory provisions on the same subject,
the objective of the statute, and the circumstances under which the statute was
enacted.[27]

We believe that the history of section 181.005,
the legislature=s objectives for it and its
predecessor, and the circumstances under which both versions of the statute
were enacted evidence a legislative intent that gas corporations be allowed to
lay pipelines under railroads.  The predecessor statute to section 181.005
provided as follows:

Art. 1436 Right-of-Way

Such corporation shall have the right and power to enter upon, condemn
and appropriate the lands, right-of-way, easements and property of any person
or corporation, and shall have the right to erect its lines over and across any
public road, railroad, railroad right-of-way, interurban railroad, street
railroad, canal or stream in this State, any street or alley of any
incorporated city or town in this State with the consent and under the
direction of the governing body of such city or town.  Such lines shall be constructed upon suitable
poles in the most approved manner, or pipes may be placed under the ground,
as the exigencies of the case may require.[28]








Prior to the enactment of article 1436, electric companies suspended electric
wires across public roads without any real authority.[29]  If the wires fell, causing injury, the
companies were subjected to liability. 
To alleviate the situation, the legislature, through passage of article
1436, granted authority to gas and electric corporations to cross roads,
railroads, streams, and other such obstacles.[30]  Thus, by enacting article 1436, the
legislature recognized the importance and public necessity associated with the
construction and operation of pipelines by public utilities.[31]  The legislature also recognized that
pipelines would have to cross the long corridors created by public roads,
railroads, canals and streams and provided a means for public utilities to meet
their obligations to serve the public, including placing the pipelines
underground if necessary.[32]








Construing the utilities code to exclude
placement of pipelines under a railroad would not only thwart the purpose of
the statute, it would lead to the absurd result of allowing placement of
pipelines over, but not under, railroads_even when an underground
pipeline would be the safest and most suitable placement of the pipeline.  Certainly, the legislature did not intend to limit
the power of gas utilities and pipeline companies to laying pipeline only over
or above ground, regardless of the risk to public safety or convenience.








We also find authority for the laying of
pipelines underground in section 181.022 of the utilities code.  This section grants gas corporations the
express authority to lay and maintain pipelines Athrough,
under, along, across, or over . . . public highway[s].@[33]  Article X, section 2 of the Texas
Constitution declares railroads to be Apublic
highways.@[34]  Because railroads are public highways, we
hold that appellees possess additional statutory authority to lay pipelines
under railroads by virtue of section 181.022 of the utilities code.








Appellants contend, however, that if railroads
are public highways, laying the pipelines would destroy appellants= prior
public use of the land.[35]  The Supreme Court of Texas has held, however,
that courts need not consider whether a utility easement is consistent with or
destructive of a railroad=s prior public use of the
property because, when the legislature granted utilities the power to condemn
and cross railroads, it implicitly determined that the use of the property for
a utility crossing is consistent with the railroad=s prior
public use.[36]  Consequently, Ano
question as to the comparative importance of the two uses@ is Aleft
open for the courts to determine.@[37]  Moreover, the trial court found that
appellees= condemnation for the pipeline
easement at issue would Anot interfer[e] with railroad
operations.@ 
There is no evidence in the record that appellants= prior
public use of the property for railroad operations would be destroyed.

Accordingly, we hold that appellees are
authorized to lay pipelines under railroads and that their exercise of this
right is consistent with, and will not destroy, the railroad=s prior
public use.

E.     Exclusive Federal
Jurisdiction

Finally, appellants argue that appellees=
condemnation proceedings are preempted by the exclusive jurisdiction of the
federal Surface Transportation Board (STB) because the easements at issue are
so broad as to impact railroad operations. 
In determining issues of federal preemption, we start with a Apresumption
against pre-emption@ unless it was the clear and
manifest purpose of Congress to supercede state powers.[38]

The STB=s
jurisdiction is set out in 49 U.S.C. ' 10501(b)
as follows:

The jurisdiction of the
[STB] overB

(1)
transportation by rail carriers, and the remedies provided in this part with
respect to rates, classifications, rules (including car service, interchange,
and other operating rules), practices, routes, services, and facilities of such
carriers; and








(2) the
construction, acquisition, operation, abandonment, or discontinuance of spur,
industrial, team, switching, or side tracks, or facilities, even if the tracks
are located, or intended to be located, entirely in one State,

is exclusive.  Except as otherwise provided in this part,
the remedies provided under this part with respect to regulation of rail
transportation are exclusive and preempt the remedies provided under Federal or
State law.[39]

This statute expresses Congress=s intent
to preempt state regulatory authority over railroad operations.[40]  However, exclusive federal jurisdiction
applies only when the state action is regulatory in nature or would otherwise
impede railroad operations.[41]








Appellants do not contend that
appellees= laying of gas pipelines under
the railroads involve the regulation of railroad operations.  Moreover, appellants offered no evidence that
appellees= pipelines will impede railroad
operations.  Therefore, we must presume
that Congress did not intend the scope of STB preemption to include appellees=
exercise of eminent domain powers in these cases.[42]  We, therefore, hold that appellees=
condemnations do not invoke the STB=s
exclusive jurisdiction.

III.     Conclusion

Having overruled all of
appellants= issues, we hold that the trial
court did not err in denying appellants= pleas
to the jurisdiction.  The orders of the
trial court are affirmed.

 

 

JOHN CAYCE

CHIEF JUSTICE

 

PANEL: 
CAYCE, C.J.; GARDNER and WALKER, JJ.

DELIVERED: 
October 1, 2009











[1]See Tex. Prop. Code Ann. ' 21.014 (Vernon
2004) (providing in part that, in a condemnation or eminent domain case, the
judge Ashall appoint three
disinterested freeholders who reside in the county as special commissioners to
assess the damages of the owner of the property being condemned@).





[2]See 49 U.S.C. ' 10501(b) (2007).





[3]See Tex. Dep=t of Parks & Wildlife
v. Miranda,
133 S.W.3d 217, 226 (Tex. 2004).





[4]Bland Indep. Sch. Dist.
v. Blue,
34 S.W.3d 547, 554 (Tex. 2000).





[5]Id.





[6]See Miranda, 133 S.W.3d at 226; Tex.
Ass=n of Bus. v. Tex. Air
Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993).





[7]See Miranda, 133 S.W.3d at 226.





[8]Id. at 227; Bland ISD,
34 S.W.3d at 555.





[9]Miranda, 133 S.W.3d at 227B28.





[10]Id. at 228; see Bland
ISD, 34 S.W.3d at 555; City of Fort Worth v. Shilling, 266 S.W.3d
97, 101 (Tex. App.CFort Worth 2008, pet.
denied).





[11]See Tex. Gov=t Code Ann. ' 2003.021 (Vernon 2008)
(providing that SOAH is an Aindependent forum@ to conduct executive
branch adjudicative hearings in cases under chapter 2001 of the government code
and cases voluntarily referred by a governmental agency).





[12]See id. ' 2001.171 (Vernon
2008) (AA person who has
exhausted all administrative remedies available within a state agency and who
is aggrieved by a final decision in a contested case is entitled to judicial
review under this chapter.@).





[13]See id. ' 2001.003(7) (Vernon
2008) (emphasis added).





[14]See, e.g., Sanchez v.
Huntsville Indep. Sch. Dist., 844 S.W.2d 286, 289 (Tex. App.CHouston [1st Dist.] 1992,
no writ) (school district not Astate agency@ under APA); Bd. of Trs. of Big Spring Firemen=s Relief & Retirement
Fund v. Firemen=s Pension Comm'r, 808 S.W.2d 608, 610B11 (Tex. App.CAustin 1991, no writ)
(firefighters= relief and retirement fund
board not Astate agency@ under APA); Hawthorne
v. City of Dallas, No. 05-99-01123-CV, 2000 WL 1240015, at *2 n.8 (Tex.
App.CDallas Aug. 31, 2000,
pet. denied) (not designated for publication) (police department not Astate agency@ under APA).





[15]See Tex. Rev. Civ. Stat.
Ann. art. 6550c, '' 1B9 (Vernon Supp. 2008).





[16]See id. ' 3(b) (AA county eligible to
create or re‑create a district is one in which is located a rail line
that is in the process of being or has been abandoned through a bankruptcy
court or Interstate Commerce Commission proceeding, or any line carrying 3
million gross tons per mile per year or less.@); id. ' 3(c)(1) (stating a
multi-county rail district may declare its Aboundaries . . . as the boundaries of the
counties included@ in the rail district); id.
' 3A(b) (stating the
boundaries of a single-county rail district Aare the boundaries of the county in which the
district is created@); id. ' 5 (establishing
rail district powers and duties).





[17]See Tex. Util. Code Ann. ' 181.004 (Vernon
2007); Tex. Nat. Res. Code Ann. ' 111.019 (Vernon 2001).





[18]Tex. Util. Code Ann. ' 181.004 (emphasis
added).





[19]Tex. Nat. Res. Code Ann. ' 111.019 (emphasis
added).





[20]See Tex. Gov=t Code Ann. ' 311.002(1) (Vernon
2005) (stating that the Code Construction Act Aapplies to . . . each
code enacted by the 60th or a subsequent legislature as part of the state=s continuing statutory
revision program@); see also Act of
May 8, 1997, 75th Leg., R.S., ch. 166, '' 1B12, 1997 Tex. Gen. Laws 713, 1018 (enactment of
Texas Utilities Code); Act of May 21, 1977, 65th Leg., R.S., ch. 871, art. I, '' 1B17, 1977 Tex. Gen. Laws
2345, 2697 (enactment of Texas Natural Resources Code).





[21]Tex. Gov=t Code Ann. ' 311.005 (Vernon
2005).





[22]Id. ' 311.005(2)
(emphasis added).





[23]Tex. Rev. Civ. Stat. Ann.
art. 6550c ' 5(a); id. ' 1(5) (stating rail
districts are Apolitical subdivisions@).





[24]Appellants contend that
using this Code Construction Act definition of Aperson@ to include governmental
subdivisions is too broad because it would allow gas corporations to condemn
the property of any governmental subdivision.  Our construction of the statutes at issue,
however, is limited to the question of whether a rail district is a Aperson@ whose property is
subject to condemnation by a utilities corporation and common carrier.  We do not address the issue of whether other
governmental units would fall within this definition.





[25]See Act of May 8, 1997, 75th
Leg., R.S., ch. 166, ' 1, 1997 Tex. Gen.
Laws 713, 983 (emphasis added).  Section
181.005 was amended during the 81st Legislature by Act of May 25, 2009, 81st
Leg., R.S., ch. 1311, ' 2, 2009 Tex. Sess.
Law Serv., 4117, 4117 (Vernon 2009) (effective June 19, 2009) (providing that a
gas corporation has the Aright to lay and maintain
lines over, along, under, and across a public road, a railroad, railroad
right-of-way, an interurban railroad, a street railroad, a canal or stream, or
a municipal street or alley@ (emphasis omitted)).  The former version of section 181.005 applies
to this case.





[26]Tex. Gov=t Code Ann. ' 311.011 (Vernon 2005); Entergy
Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437 (Tex. 2009); City of
Rockwall v. Hughes, 246 S.W.3d 621, 625B26 (Tex. 2008).





[27]Tex. Gov=t Code Ann. ' 311.023(1)B(5) (Vernon 2005); State
v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006) (AWe may consider other
matters in ascertaining legislative intent, including the objective of the law,
its history, and the consequences of a particular construction.@); Union Bankers Ins.
Co. v. Shelton, 889 S.W.2d 278, 280 (Tex. 1994) (AWhen determining
legislative intent, the courts may look to the language of the statute,
legislative history, the nature and object to be obtained, and the consequences
that would follow from alternate constructions.@).





[28]Act approved Mar. 25,
1911, 32nd Leg., R.S., ch. 111, ' 4, 1911 Tex. Gen. Laws 228, 229 (emphasis
added), repealed by Act of May 8, 1997, 75th Leg., R.S., ch. 166, ' 1, secs. 181.004B.006, 1997 Tex. Gen. Laws
713, 983 (current version at Tex. Util. Code Ann. '' 181.004B.006 (Vernon 2007)).





[29]See Incorporated Town of
Hempstead v. Gulf States Utils. Co., 146 Tex. 250, 254, 206 S.W.2d 227, 229 (1947).





[30]Id. at 254B55, 206 S.W.2d at 229B30.





[31]See, e.g., id. at 254, 206
S.W.2d at 228B29 (noting importance of
electric companies= ability to condemn and
cross public roads and railroads even if permission is refused); Lo-Vaca
Gathering Co. v. Mo.-Kan.-Tex. R.R. Co., 476 S.W.2d 732, 739 (Tex. Civ.
App.CAustin 1972, writ ref=d n.r.e.) (same applies
to pipeline corporations).





[32]Act approved Mar. 25, 1911,
32nd Leg., R.S., ch. 111, ' 4, 1911 Tex. Gen. Laws 228, 229 (repealed
1997); see Lo-Vaca, 476 S.W.2d at 739 (legislature gave utilities and
pipeline corporations Athe extraordinary power
of eminent domain@ to ensure the ability to
cross Aany public road,
railroad, railroad right of way, interurban railroad, street railroad, canal or
stream in this State@); Koslosky v. Tex.
Elec. Serv. Co., 213 S.W.2d 853, 854 (Tex. Civ. App.CEastland 1948, writ ref=d) (discussing importance
of eminent domain so that power lines would not be required to stop absent
permission to cross).





[33]Tex. Util. Code Ann. ' 181.022 (Vernon
2007) (emphasis added).  Unlike utilities
code section 181.005, section 181.022, was not amended by the 81st legislature.





[34]Tex. Const. art. X, ' 2 (ARailroads heretofore
constructed or which may hereafter be constructed in this state are hereby
declared public highways . . . .@).





[35]When property is already
devoted to public use, it may not be condemned if the proposed use Awould practically destroy
the use to which it has been devoted,@ absent a showing of paramount necessity.  Canyon Reg'l Water Auth. v. Guadalupe‑Blanco
River Auth., 258 S.W.3d 613, 616B17 (Tex. 2008) (quoting Sabine & E.Tex.
Ry. Co. v. Gulf & Interstate Ry. Co. of Tex., 92 Tex. 162, 166, 46 S.W.
784, 786 (1898)).





[36]Fort Worth & Rio
Grande Ry. Co. v. Sw. Tel. & Tel. Co., 96 Tex. 160, 173, 71 S.W. 270, 275
(1903); see Lo‑Vaca, 476 S.W.2d at 737.





[37]Fort Worth & Rio
Grande Ry. Co, 96 Tex. at 173, 71 S.W. at 275; see Lo‑Vaca, 476
S.W.2d at 738B39.





[38]Wyeth v. Levine, ‑‑‑-
U.S. ‑‑‑‑, 129 S. Ct. 1187, 1194B95 & 1195 n.3 (2009)
(quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S. Ct. 2240,
2250 (1996)).





[39]49 U.S.C. ' 10501(b) (2007).





[40]See 49 U.S.C. ' 10102(9)(A) (2007);
Friberg v. Kan. City S. Ry. Co., 267 F.3d 439, 443 (5th Cir. 2001) (AThe regulation of
railroad operations has long been a traditionally federal endeavor, to better
establish uniformity in such operations and expediency in commerce . . . .@); CSX Transp., Inc.
v. Ga. Pub. Serv. Comm'n, 944 F.Supp. 1573, 1582 (N.D. Ga. 1996) (holding
that 49 U.S.C. ' 10501(b) provides Aan incredibly wide grant
of exclusive jurisdiction to the STB to regulate railroad operations@).





[41]See Friberg, 267 F.3d at 443B44; City of Sachse,
Tex. v. Kan. City S., 564 F.Supp.2d 649, 656 (E.D. Tex. 2008).





[42]See, e.g., Wyeth, ---- U.S.
----, 129 S. Ct. at 1194B95 & 1195 n.3
(requiring initial presumption against federal preemption of state power); CSX
Transp., 944 F.Supp. at 1582 (holding that STB has exclusive jurisdiction Ato regulate railroad
operations@).