

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-07-403-CV

FORT WORTH & WESTERN RAILROAD                    APPELLANTS
COMPANY AND CEN-TEX RURAL
RAIL TRANSPORTATION DISTRICT

V.

ENBRIDGE GATHERING                                APPELLEE
(NE TEXAS LIQUIDS), L.P.

NO. 2-07-405-CV

FORT WORTH & WESTERN RAILROAD                    APPELLANTS
COMPANY AND CEN-TEX RURAL
RAIL TRANSPORTATION DISTRICT

V.

COWTOWN PIPELINE PARTNERS LP                      APPELLEE

NO. 2-07-406-CV

FORT WORTH & WESTERN RAILROAD                    APPELLANTS
COMPANY AND CEN-TEX RURAL
RAIL TRANSPORTATION DISTRICT

V.

WORSHAM-STEED GAS STORAGE, L.P.                   APPELLEE

------------

FROM COUNTY COURT AT LAW OF HOOD COUNTY

------------

# OPINION

------------

Appellants Cen-Tex Rural Rail Transportation District and Fort Worth & Western Railroad Company filed this interlocutory appeal from the trial court's orders denying their pleas to the jurisdiction in three separate pipeline condemnation cases brought by appellees Worsham-Steed Gas Storage, L.P., Cowtown Pipeline Partners LP, and Enbridge Gathering (NE Texas Liquids), L.P. The primary issue we must decide is whether gas utilities and pipeline companies have the power to condemn rail district property and to run pipelines under the railroads. We hold that they do and affirm the orders of the trial court denying appellants' pleas to the jurisdiction.

## I.    Background

Three separate pipeline condemnation cases were filed by appellees Worsham-Steed Gas Storage, L.P. (Worsham-Steed), Cowtown Pipeline Partners LP (Cowtown), and Enbridge Gathering (NE Texas Liquids), L.P. (Enbridge). Each entity sought acquisition of an easement for installation and maintenance of a pipeline under railroad tracks located in Hood County that are owned by Cen-Tex Rural Rail Transportation District (Cen-Tex), and on which Fort Worth & Western Railroad Company (Fort Worth & Western) owns

2

easements to conduct rail operations. Prior to filing the condemnation proceedings, appellees attempted to negotiate the purchase of permanent easements from Cen-Tex, but the parties failed to reach agreement.

Pursuant to the Texas Property Code, the trial court appointed a panel of special commissioners to determine appellants' damages arising from the condemnations.[1] After hearings in each proceeding, the commissioners awarded damages to Cen-Tex and Fort Worth & Western arising from the condemnations and assessed costs against appellees.

Appellants did not appear at the hearings. Instead, they both filed pleas to the jurisdiction in the trial court, objecting to the condemnation proceedings on the grounds that appellees have no authority to condemn rail district property and that the statute authorizing gas utilities to obtain easements to lay pipelines does not authorize laying pipelines under railroads. Appellants also complained that appellees failed to exhaust their administrative remedies and that the condemnation proceedings were preempted by federal law.[2] The trial court denied the pleas, and these consolidated appeals followed.

---

[1] See Tex. Prop. Code Ann. § 21.014 (Vernon 2004) (providing in part that, in a condemnation or eminent domain case, the judge "shall appoint three disinterested freeholders who reside in the county as special commissioners to assess the damages of the owner of the property being condemned").

[2] See 49 U.S.C. § 10501(b) (2007).

## II.    Analysis

## A.    Standard of Review

We review de novo the denial of a plea to the jurisdiction.[3] A plea to the jurisdiction is a dilatory plea; its purpose is to defeat a cause of action without regard to whether the claims asserted have merit.[4] The purpose of a dilatory plea is not to force the plaintiff to preview the case on its merits but to establish a reason why the merits of the plaintiff's claims should never be reached.[5]

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause.[6] We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent.[7] If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues

---

[3] *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

[4] *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

[5] *Id.*

[6] *See Miranda*, 133 S.W.3d at 226; *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

[7] *See Miranda*, 133 S.W.3d at 226.

raised, as the trial court is required to do.[8] If the evidence creates a fact question regarding the jurisdictional issue, then the court cannot grant the plea to the jurisdiction and the fact issue will be resolved by the fact finder.[9] However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.[10]

B.    Exhaustion of Administrative Remedies

Appellants argue that the trial court lacked subject matter jurisdiction over the condemnation proceedings because appellees failed to exhaust their administrative remedies under the Administrative Procedure Act (APA) by failing to appeal Cen-Tex's offered terms and rates to the Cen-Tex board and to the State Office of Administrative Hearings (SOAH).[11] According to appellants, only

---

[8] *... Id.* at 227; *Bland ISD*, 34 S.W.3d at 555.

[9] *... Miranda*, 133 S.W.3d at 227–28.

[10] *... Id.* at 228; *see Bland ISD*, 34 S.W.3d at 555; *City of Fort Worth v. Shilling*, 266 S.W.3d 97, 101 (Tex. App.—Fort Worth 2008, pet. denied).

[11] *... See* Tex. Gov't Code Ann. § 2003.021 (Vernon 2008) (providing that SOAH is an "independent forum" to conduct executive branch adjudicative hearings in cases under chapter 2001 of the government code and cases voluntarily referred by a governmental agency).

after a final SOAH determination of the issue would appellees have been permitted to appeal in the appropriate district court.[12]

The APA applies to the decisions of a "state agency," which is defined by the statute as "a state officer, board, commission, or department with *statewide jurisdiction* that makes rules or determines contested cases."[13] Consistent with this definition, courts have held that the APA does not apply to administrative bodies that lack state wide jurisdiction.[14]

Under the provisions of the Rural Rail Transportation District Act (Rail District Act),[15] Cen-Tex does not have statewide jurisdiction. Instead, the Rail District Act establishes that rail districts may be formed only by certain counties

---

[12]... *See id.* § 2001.171 (Vernon 2008) ("A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter.").

[13]... *See id.* § 2001.003(7) (Vernon 2008) (emphasis added).

[14]... *See, e.g.*, *Sanchez v. Huntsville Indep. Sch. Dist.*, 844 S.W.2d 286, 289 (Tex. App.—Houston [1st Dist.] 1992, no writ) (school district not "state agency" under APA); *Bd. of Trs. of Big Spring Firemen's Relief & Retirement Fund v. Firemen's Pension Comm'r*, 808 S.W.2d 608, 610–11 (Tex. App.—Austin 1991, no writ) (firefighters' relief and retirement fund board not "state agency" under APA); *Hawthorne v. City of Dallas*, No. 05-99-01123-CV, 2000 WL 1240015, at *2 n.8 (Tex. App.—Dallas Aug. 31, 2000, pet. denied) (not designated for publication) (police department not "state agency" under APA).

[15]... *See* Tex. Rev. Civ. Stat. Ann. art. 6550c, §§ 1–9 (Vernon Supp. 2008).

and are limited geographically to the counties that form them.[16] Because Cen-Tex lacks state wide jurisdiction, it is not a "state agency" within the meaning of the APA. Therefore, we hold that appellees were not required to follow APA procedures by appealing Cen-Tex's offer to the SOAH before filing condemnation proceedings in the trial court.

C.   Gas Utilities Authority and Common Carrier Authority to Condemn Property of Rural Rail Transportation Districts

Appellants contend that appellees are not empowered to condemn property owned by Cen-Tex because the Texas Utilities Code and the Texas Natural Resources Code only authorize gas companies and common carriers to condemn the property of "any person or corporation," and, according to appellants, Cen-Tex is neither a person nor a corporation.[17]

Section 181.004 of the utility code provides:

---

[16] *See id.* § 3(b) ("A county eligible to create or re-create a district is one in which is located a rail line that is in the process of being or has been abandoned through a bankruptcy court or Interstate Commerce Commission proceeding, or any line carrying 3 million gross tons per mile per year or less."); *id.* § 3(c)(1) (stating a multi-county rail district may declare its "boundaries . . . as the boundaries of the counties included" in the rail district); *id.* § 3A(b) (stating the boundaries of a single-county rail district "are the boundaries of the county in which the district is created"); *id.* § 5 (establishing rail district powers and duties).

[17] *See* Tex. Util. Code Ann. § 181.004 (Vernon 2007); Tex. Nat. Res. Code Ann. § 111.019 (Vernon 2001).

7

A gas or electric corporation has the right and power to enter on, condemn, and appropriate the land, right-of-way, easement, or other property of *any person or corporation*.[18]

Similarly, section 111.019 of the natural resources code provides:

(a) Common carriers have the right and power of eminent domain.

(b) In the exercise of the power of eminent domain granted under the provisions of Subsection (a) of this section, a common carrier may enter on and condemn the land, rights-of-way, easements, and property of *any person or corporation* necessary for the construction, maintenance, or operation of the common carrier pipeline.[19]

The Code Construction Act governs our interpretation of the Texas Utilities Code and Texas Natural Resources Code.[20] We are to apply its definitions when interpreting statutes "unless the statute or context in which the word or phrase is used requires a different definition."[21]

---

[18] Tex. Util. Code Ann. § 181.004 (emphasis added).

[19] Tex. Nat. Res. Code Ann. § 111.019 (emphasis added).

[20] *See* Tex. Gov't Code Ann. § 311.002(1) (Vernon 2005) (stating that the Code Construction Act "applies to . . . each code enacted by the 60th or a subsequent legislature as part of the state's continuing statutory revision program"); *see also* Act of May 8, 1997, 75th Leg., R.S., ch. 166, §§ 1–12, 1997 Tex. Gen. Laws 713, 1018 (enactment of Texas Utilities Code); Act of May 21, 1977, 65th Leg., R.S., ch. 871, art. I, §§ 1–17, 1977 Tex. Gen. Laws 2345, 2697 (enactment of Texas Natural Resources Code).

[21] Tex. Gov't Code Ann. § 311.005 (Vernon 2005).

"Person" is defined in the Code Construction Act to include a "corporation, organization, government or *governmental subdivision* or agency, business trust, estate, trust, partnership, association, and any other legal entity."[22] The Rail District Act expressly provides that a rail district is a "public body and a political subdivision of the state exercising public and essential government functions."[23] Thus the term "person" in the utilities and natural resources codes includes rail districts such as Cen-Tex. Nothing in the language of either code, or the context in which the term "person" is used in the codes, require a different definition. We, therefore, hold that Cen-Tex is a "person" whose property may be condemned by a gas corporation or common carrier under section 181.004 of the utilities code and section 111.019 of the natural resources code, respectively.[24]

---

[22] ... *Id.* § 311.005(2) (emphasis added).

[23] ... Tex. Rev. Civ. Stat. Ann. art. 6550c § 5(a); *id.* § 1(5) (stating rail districts are "political subdivisions").

[24] ... Appellants contend that using this Code Construction Act definition of "person" to include governmental subdivisions is too broad because it would allow gas corporations to condemn the property of *any* governmental subdivision. Our construction of the statutes at issue, however, is limited to the question of whether a rail district is a "person" whose property is subject to condemnation by a utilities corporation and common carrier. We do not address the issue of whether other governmental units would fall within this definition.

D.     Gas Corporations' Right to Place Pipelines "Under" Rail District Property

Appellants argue that former section 181.005 of the utilities code does not authorize Worsham-Steed and Cowtown to lay pipelines *under* railroads. That section stated:

> A gas corporation has the right to lay and maintain lines *over and across* a public road, a railroad, railroad right-of-way, an interurban railroad, a street railroad, a canal or stream, or a municipal street or alley.[25]

In construing former section 181.005, we rely on the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to an absurd result.[26]   We may consider other matters in ascertaining legislative intent,

---

[25] *See* Act of May 8, 1997, 75th Leg., R.S., ch. 166, § 1, 1997 Tex. Gen. Laws 713, 983 (emphasis added).  Section 181.005 was amended during the 81st Legislature by Act of May 25, 2009, 81st Leg., R.S., ch. 1311, § 2, 2009 Tex. Sess. Law Serv., 4117, 4117 (Vernon 2009) (effective June 19, 2009) (providing that a gas corporation has the "right to lay and maintain lines over, along, *under*, and across a public road, a railroad, railroad right-of-way, an interurban railroad, a street railroad, a canal or stream, or a municipal street or alley" (emphasis omitted)).  The former version of section 181.005 applies to this case.

[26] Tex. Gov't Code Ann. § 311.011 (Vernon 2005); *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008).

including former statutory provisions on the same subject, the objective of the statute, and the circumstances under which the statute was enacted.[27]

We believe that the history of section 181.005, the legislature's objectives for it and its predecessor, and the circumstances under which both versions of the statute were enacted evidence a legislative intent that gas corporations be allowed to lay pipelines *under* railroads. The predecessor statute to section 181.005 provided as follows:

> Art. 1436 Right-of-Way
>     Such corporation shall have the right and power to enter upon, condemn and appropriate the lands, right-of-way, easements and property of any person or corporation, and shall have the right to erect its lines over and across any public road, railroad, railroad right-of-way, interurban railroad, street railroad, canal or stream in this State, any street or alley of any incorporated city or town in this State with the consent and under the direction of the governing body of such city or town. Such lines shall be constructed upon suitable poles in the most approved manner, *or pipes may be placed under the ground, as the exigencies of the case may require.*[28]

---

[27] Tex. Gov't Code Ann. § 311.023(1)–(5) (Vernon 2005); *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("We may consider other matters in ascertaining legislative intent, including the objective of the law, its history, and the consequences of a particular construction."); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994) ("When determining legislative intent, the courts may look to the language of the statute, legislative history, the nature and object to be obtained, and the consequences that would follow from alternate constructions.").

[28] Act approved Mar. 25, 1911, 32nd Leg., R.S., ch. 111, § 4, 1911 Tex. Gen. Laws 228, 229 (emphasis added), *repealed by* Act of May 8, 1997,

Prior to the enactment of article 1436, electric companies suspended electric wires across public roads without any real authority.[29] If the wires fell, causing injury, the companies were subjected to liability. To alleviate the situation, the legislature, through passage of article 1436, granted authority to gas and electric corporations to cross roads, railroads, streams, and other such obstacles.[30] Thus, by enacting article 1436, the legislature recognized the importance and public necessity associated with the construction and operation of pipelines by public utilities.[31] The legislature also recognized that pipelines would have to cross the long corridors created by public roads, railroads, canals and streams and provided a means for public utilities to meet their obligations to serve the public, including placing the pipelines underground if necessary.[32]

---

75th Leg., R.S., ch. 166, § 1, secs. 181.004–.006, 1997 Tex. Gen. Laws 713, 983 (current version at Tex. Util. Code Ann. §§ 181.004–.006 (Vernon 2007)).

[29] *See Incorporated Town of Hempstead v. Gulf States Utils. Co.*, 146 Tex. 250, 254, 206 S.W.2d 227, 229 (1947).

[30] *Id.* at 254–55, 206 S.W.2d at 229–30.

[31] *See, e.g.*, *id.* at 254, 206 S.W.2d at 228–29 (noting importance of electric companies' ability to condemn and cross public roads and railroads even if permission is refused); *Lo-Vaca Gathering Co. v. Mo.-Kan.-Tex. R.R. Co.*, 476 S.W.2d 732, 739 (Tex. Civ. App.—Austin 1972, writ ref'd n.r.e.) (same applies to pipeline corporations).

[32] Act approved Mar. 25, 1911, 32nd Leg., R.S., ch. 111, § 4, 1911 Tex. Gen. Laws 228, 229 (repealed 1997); *see Lo-Vaca*, 476 S.W.2d at 739

Construing the utilities code to exclude placement of pipelines under a railroad would not only thwart the purpose of the statute, it would lead to the absurd result of allowing placement of pipelines over, but not under, railroads—even when an underground pipeline would be the safest and most suitable placement of the pipeline. Certainly, the legislature did not intend to limit the power of gas utilities and pipeline companies to laying pipeline only over or above ground, regardless of the risk to public safety or convenience.

We also find authority for the laying of pipelines underground in section 181.022 of the utilities code. This section grants gas corporations the express authority to lay and maintain pipelines "through, *under*, along, across, or over . . . *public highway*[*s*]."[33] Article X, section 2 of the Texas Constitution declares railroads to be "public highways."[34] Because railroads are public

---

(legislature gave utilities and pipeline corporations "the extraordinary power of eminent domain" to ensure the ability to cross "any public road, railroad, railroad right of way, interurban railroad, street railroad, canal or stream in this State"); *Koslosky v. Tex. Elec. Serv. Co.*, 213 S.W.2d 853, 854 (Tex. Civ. App.—Eastland 1948, writ ref'd) (discussing importance of eminent domain so that power lines would not be required to stop absent permission to cross).

[33] Tex. Util. Code Ann. § 181.022 (Vernon 2007) (emphasis added). Unlike utilities code section 181.005, section 181.022, was not amended by the 81st legislature.

[34] Tex. Const. art. X, § 2 ("Railroads heretofore constructed or which may hereafter be constructed in this state are hereby declared public highways . . . .").

highways, we hold that appellees possess additional statutory authority to lay pipelines under railroads by virtue of section 181.022 of the utilities code.

Appellants contend, however, that if railroads are public highways, laying the pipelines would destroy appellants' prior public use of the land.[35] The Supreme Court of Texas has held, however, that courts need not consider whether a utility easement is consistent with or destructive of a railroad's prior public use of the property because, when the legislature granted utilities the power to condemn and cross railroads, it implicitly determined that the use of the property for a utility crossing is consistent with the railroad's prior public use.[36] Consequently, "no question as to the comparative importance of the two uses" is "left open for the courts to determine."[37] Moreover, the trial court found that appellees' condemnation for the pipeline easement at issue would "not interfer[e] with railroad operations." There is no evidence in the record

---

[35] ... When property is already devoted to public use, it may not be condemned if the proposed use "would practically destroy the use to which it has been devoted," absent a showing of paramount necessity. *Canyon Reg'l Water Auth. v. Guadalupe-Blanco River Auth.*, 258 S.W.3d 613, 616–17 (Tex. 2008) (quoting *Sabine & E.Tex. Ry. Co. v. Gulf & Interstate Ry. Co. of Tex.*, 92 Tex. 162, 166, 46 S.W. 784, 786 (1898)).

[36] ... *Fort Worth & Rio Grande Ry. Co. v. Sw. Tel. & Tel. Co.*, 96 Tex. 160, 173, 71 S.W. 270, 275 (1903); *see Lo-Vaca*, 476 S.W.2d at 737.

[37] ... *Fort Worth & Rio Grande Ry. Co*, 96 Tex. at 173, 71 S.W. at 275; *see Lo-Vaca*, 476 S.W.2d at 738–39.

14

that appellants' prior public use of the property for railroad operations would be destroyed.

Accordingly, we hold that appellees are authorized to lay pipelines under railroads and that their exercise of this right is consistent with, and will not destroy, the railroad's prior public use.

E.     Exclusive Federal Jurisdiction

Finally, appellants argue that appellees' condemnation proceedings are preempted by the exclusive jurisdiction of the federal Surface Transportation Board (STB) because the easements at issue are so broad as to impact railroad operations.   In determining issues of federal preemption, we start with a "presumption against pre-emption" unless it was the clear and manifest purpose of Congress to supercede state powers.[38]

The STB's jurisdiction is set out in 49 U.S.C. § 10501(b) as follows:

The jurisdiction of the [STB] over—

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

---

[38] ... *Wyeth v. Levine*, ---- U.S. ----, 129 S. Ct. 1187, 1194–95 & 1195 n.3 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S. Ct. 2240, 2250 (1996)).

15

(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.[39]

This statute expresses Congress's intent to preempt state regulatory authority over railroad operations.[40] However, exclusive federal jurisdiction applies only when the state action is regulatory in nature or would otherwise impede railroad operations.[41]

---

[39] 49 U.S.C. § 10501(b) (2007).

[40] *See* 49 U.S.C. § 10102(9)(A) (2007); *Friberg v. Kan. City S. Ry. Co.*, 267 F.3d 439, 443 (5th Cir. 2001) ("The regulation of railroad operations has long been a traditionally federal endeavor, to better establish uniformity in such operations and expediency in commerce . . . ."); *CSX Transp., Inc. v. Ga. Pub. Serv. Comm'n*, 944 F.Supp. 1573, 1582 (N.D. Ga. 1996) (holding that 49 U.S.C. § 10501(b) provides "an incredibly wide grant of exclusive jurisdiction to the STB to regulate railroad operations").

[41] *See Friberg*, 267 F.3d at 443–44; *City of Sachse, Tex. v. Kan. City S.*, 564 F.Supp.2d 649, 656 (E.D. Tex. 2008).

Appellants do not contend that appellees' laying of gas pipelines under the railroads involve the regulation of railroad operations. Moreover, appellants offered no evidence that appellees' pipelines will impede railroad operations. Therefore, we must presume that Congress did not intend the scope of STB preemption to include appellees' exercise of eminent domain powers in these cases.[42] We, therefore, hold that appellees' condemnations do not invoke the STB's exclusive jurisdiction.

### III.    Conclusion

Having overruled all of appellants' issues, we hold that the trial court did not err in denying appellants' pleas to the jurisdiction. The orders of the trial court are affirmed.

JOHN CAYCE
CHIEF JUSTICE

PANEL:  CAYCE, C.J.; GARDNER and WALKER, JJ.

DELIVERED:  October 1, 2009

---

[42]... *See, e.g.*, *Wyeth*, ---- U.S. ----, 129 S. Ct. at 1194–95 & 1195 n.3 (requiring initial presumption against federal preemption of state power); *CSX Transp.*, 944 F.Supp. at 1582 (holding that STB has exclusive jurisdiction "to regulate railroad operations").