# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00635-CV

**City of Dallas, Texas, Appellant**

**v.**

**Public Utility Commission of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
### NO. D-1-GV-10-001924, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The City of Dallas filed an application to be certified as a retail electric provider. After reviewing the application, the Public Utility Commission denied the request. Subsequent to the Commission's ruling, the City sought judicial review. Ultimately, the district court affirmed the Commission's ruling, and the City appeals that determination. We will affirm the district court's order.

## BACKGROUND

The City is a municipal corporation that wants to buy electric power directly from power generators. To accomplish this goal, the City sought approval from the Commission to be certified as a retail electric provider. *See* Tex. Util. Code §§ 31.002(17) (defining retail electric provider as "a person that sells electric energy to retail customers in this state"), 39.352(a) (requiring person seeking to provide retail electric service to first become certified as retail electric provider).

After reviewing the application and considering the City's arguments in favor of certification, the Commission denied the City's certification request. Essentially, the Commission determined that municipal corporations are not eligible for certification under the Commission's rule. Subsequent to receiving the Commission's ruling, the City filed a petition for judicial review with the district court. In its suit, the City challenged the Commission's order but also asked the district court to declare that it was entitled to certification as a matter of law. In addition, the City pursued mandamus relief against the Commission.

After a trial, the district court issued its order affirming the Commission's denial of the City's certification request. Subsequent to the district court's ruling, the City filed this appeal.

## DISCUSSION

In two issues on appeal, the City challenges the district court's order. In its first issue, the City alleges that it met the relevant statutory requirements for being certified as a retail electric provider and that, therefore, the Commission erred by refusing to certify it. In its second issue, the City contends that the Commission's rule regarding certification of retail electric providers does not disqualify it from certification. Accordingly, the City seeks a declaration stating that the rule does not apply to its certification request. Alternatively, the City seeks a declaration stating that if the rule does apply, it is invalid as it was applied in this case. We will address the two issues together. In addition to the issues mentioned above, the City also seeks mandamus relief compelling the Commission to approve the City's application.

The Utilities Code sets out the process for certification and requires the Commission to issue a certificate "to a person" who demonstrates that he has "the financial and technical

2

resources" needed, has the requisite "managerial and technical ability," has "the resources needed," and has "ownership or lease of an office within this state for the purpose of providing customer service, accepting service of process, and making available . . . books and records sufficient to demonstrate [his] compliance with the requirements" of the Utilities Code. Tex. Util. Code § 39.352(b). Alternatively, a person can be certified by showing that he meets the last requirement and by filing an affidavit from all of the retail customers that he "has contracted to provide one megawatt or more of capacity stating that" he satisfies the remaining three requirements listed above. *Id.* § 39.352(d). The City elected to seek its certification using the alternative method.

As outlined above, the Utilities Code authorizes the Commission to issue a certificate to a "person." *Id.* § 39.352. The dispute in this case pertains to whether the City is a "person" as contemplated by the Utilities Code. *See Oncor Elec. Delivery Co. LLC v. Public Util. Comm'n*, 406 S.W.3d 253, 260 (Tex. App.—Austin 2013, no pet.) (explaining that statutory construction is question reviewed de novo with primary goal of giving effect to legislature's intent, which is generally discerned from statute's plain language). As support for the idea that it qualifies as a person, the City points to the definition of "person" found in another chapter of the Utilities Code. That definition states that the term "person" "includes an individual, a partnership of two or more persons having a joint or common interest, a mutual or cooperative association, and a corporation, but does not include an electric cooperative." Tex. Util. Code § 11.003(14).

When discussing this definition, the City notes that the provision does not expressly exclude municipal corporations from qualifying as a "person." *Id.* On the contrary, the City highlights that the legislature's use of the word "includes" when setting out the list of qualifying

3

entities demonstrates its intent to create an expansive definition. *See* Tex. Gov't Code § 311.005(13) (explaining that word "includes" is term "of enlargement and not of limitation or exclusive enumeration, and use of the term[] does not create a presumption that components not expressed are excluded").

Moreover, the City asserts that when the legislature has intended to exclude municipal corporations from other definitions, it has expressly stated so. For example, the legislature has explained that the term "[e]lectric utility" includes "a person or river authority that owns or operates" certain "equipment or facilities" but does not include "a municipal corporation." Tex. Util. Code § 31.002(6)(A). In addition, the legislature defined the term "'[p]ublic utility' or 'utility'" as including "a person or river authority that owns or operates" certain "equipment or facilities" but as excluding "a municipal corporation." *Id.* § 51.002(8). While discussing those definitions, the City also notes that both definitions pertain to "a person" and, therefore, urges that if municipal corporations were not included in the definition of "person," there would be no need to exclude them. Furthermore, the City notes that the Commission has itself specified in other contexts that a municipality is a "person." *See* 16 Tex. Admin. Code § 22.2(29) (2013) (Pub. Util. Comm'n, Definitions) (including "municipality" within definition of "a 'person'" in rules governing practice before Commission).

In addition to mentioning the provisions of the Utilities Code discussed above, the City notes that the Code also incorporates provisions of the Code Construction Act. *See* Tex. Util. Code § 1.002 (explaining that Act applies to each provision in Code "except as otherwise expressly provided"). In light of this incorporation, the City comments that the definition for "person" under

4

the Act "includes corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." *See* Tex. Gov't Code § 311.005(2). In light of that definition, the City urges that a municipality qualifies as a person. *See Wende v. Board of Adjustment*, 27 S.W.3d 162, 167 (Tex. App.—San Antonio 2000) (explaining that city qualifies as "person" under section 311.005(2) of Government Code), *rev'd on other grounds*, 92 S.W.3d 424, 432-33 (Tex. 2002); *see also Fort Worth & W. R.R. Co. v. Enbridge Gathering*, 298 S.W.3d 392, 397-98 (Tex. App.—Fort Worth 2009, no pet.) (applying definition from Act to conclude that rail district qualifies as person under provision of Code). Moreover, the City contends that if the legislature did not intend for the Act's definition of "person" to apply, it would have stated otherwise. *See, e.g.*, Tex. Estates Code § 1002.023(b) (stating that Act's definition does not apply).

Although the City's construction of the term "person" as including municipal corporations is reasonable in light of the various provisions it refers to, when other provisions of the Utilties Code are considered as well, the legislature's intent is not entirely clear regarding whether municipal corporations can be certified as retail electric providers. As mentioned above, the Utilities Code specifies that the Commission is obligated to issue a certificate to a *person* seeking "to provide retail electric service" provided that he has shown that he has the capability to do so. Tex. Util. Code § 39.352(b). As pointed out by the City, that provision does not define the term "person," but the definitions section of the Utilities Code states that the term "includes an individual, a partnership of two or more persons having a joint or common interest, a mutual or cooperative association, and a corporation, but does not include an electric cooperative." *Id.* § 11.003(14). Of the types of entities specifically named in this provision, the City, as a municipal corporation, would seem to fall most

5

easily into the corporation category. However, the Utilities Code expressly excludes municipal corporations from the definition of corporation. *Id.* § 11.003(7) (stating that term "[c]orporation . . . . does not include a municipal corporation" unless expressly stated in statute); *see also* Tex. Loc. Gov't Code § 5.904 (explaining that municipalities should not be considered corporations unless specified by statute). By reading the definition of corporation in conjunction with the provision setting out what entities qualify as a person, the Utilities Code can be construed as stating that the term "person" includes corporations other than municipal corporations.

Accordingly, the certification provision is subject to more than one reasonable interpretation. In light of this apparent ambiguity, we believe that consideration of other methods for ascertaining legislative intent is warranted here. *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (explaining that if statutory language is ambiguous, courts may consider rules of construction or extrinsic evidence when ascertaining statute's meaning). One method expressly authorized by the legislature is the consideration of an agency's construction of the statute. *See* Tex. Gov't Code § 311.023(6). In fact, courts give "serious consideration" to an agency's interpretation of a statute that it is tasked with enforcing provided that the agency's construction is reasonable and is not contrary to the statute's plain language. *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011).

In light of the statutory language of the certification provision of the Utilities Code, *see* Tex. Util. Code § 39.352, the Commission promulgated a rule regarding the certification of retail electric providers, *see* 16 Tex. Admin. Code § 25.107 (2013) (Pub. Util. Comm'n, Certification

6

of Retail Electric Providers (REPs)).[1]  That rule significantly elaborates on the requirements for certification and the method by which a certificate may be issued.  *Id.* § 25.107(c)-(j).  Further, the rule states that it "applies to all persons who provide or seek to provide electric service to retail customers in an area in which customer choice is in effect and to retail customers participating in a customer choice pilot project authorized by the commission" and mandates that a person seeking to provide service "obtain a certificate pursuant to this subsection before purchasing, taking title to, or reselling electricity in order to provide retail electric service."  *Id.* § 25.107(a).  Moreover, the rule does not authorize municipal corporations to apply for certification.  *Id.*  Specifically, the rule

---

[1] In its second issue, the City asserts that it was unnecessary for the Commission to promulgate a rule regarding the certification of retail electric providers because the statutory requirements are clearly established.  *See* Tex. Util. Code § 39.352; 16 Tex. Admin. Code § 25.107 (2013) (Pub. Util. Comm'n, Certification of Retail Electric Providers (REPs)).  Because the rule was allegedly unnecessary, the City contends that the Commission did not have the authority to promulgate it.  *See* Tex. Util. Code § 14.002 (authorizing Commission to adopt rules that are "reasonably required").  As further support for this idea, the City also points out that nothing in the subsections of the Utilities Code setting out the requirements for certification authorizes the Commission to adopt rules implementing those requirements.  *See id.* § 39.352(b), (d).

The Commission's rule is a competition rule.  *See* 35 Tex. Reg. 10197 (2010) (Pub. Util. Comm'n) (explaining that rule 25.107 is competition rule).  Accordingly, any person seeking to challenge the validity of the rule was required to file a petition for judicial review with this Court "not later than the 15th day after the date on which the rule as adopted is published in the Texas Register."  Tex. Util. Code § 39.001(e)-(f).  The City did not file a petition for judicial review within the time required.  *Id.*  Accordingly, to the extent that the City is attempting to attack the validity of the promulgation of the rule and its terms, we may not consider those assertions in this appeal.  *See City of Alvin v. Public Util. Comm'n*, 143 S.W.3d 872, 878-79, 890 (Tex. App.—Austin 2004, no pet.) (explaining that courts do not have jurisdiction over validity challenges that do not comply with requirements of Utilities Code).  To the extent that the City asserts that it is instead challenging the manner in which the rule was applied, for the reasons discussed above, we disagree with the City's arguments that the Commission's application of the rule is inconsistent with the governing framework.

explains that it "does not apply to . . . municipal corporations." *Id.* § 25.107(a), (b)(10).[2] With this

rule, the Commission has demonstrated its belief that the governing provisions of the Utilities Code

do not allow municipal corporations to become certified to provide retail electric service.

We recognize that the Commission's interpretation is not the only permissible one.

In fact, the Commission's interpretation is not necessarily the construction of the certification

provision that we would adopt in the absence of the ambiguity discussed above. But there is an

ambiguity in the governing framework, and "we will generally uphold an agency's interpretation of"

---

[2] In its briefing, the City contends that the Commission's rule does not prohibit municipal corporations from being certified as retail electric providers; instead, the Commission argues that the rule simply states that it "does not apply" to certification requests filed by municipal corporations. *See* 16 Tex. Admin. Code § 25.107(a), (b)(10). For this reason, the City urges that municipal corporations seeking certification are relieved of the obligations imposed by the rule and need only comply with the requirements listed in the Utilities Code.

When asked to construe the rule at the administrative hearing, the administrative law judge ultimately decided that rather than merely excusing municipal corporations from its obligations, the rule made municipal corporations ineligible for certification. By its terms, the rule does exempt municipal corporations. *Id.* § 25.107(a). Moreover, the rule sets out *the* method by which individuals seeking certification may obtain a certificate from the Commission, *id.*, and the City points to no other administrative provision or method by which a municipal corporation can become certified. Accordingly, although we recognize the basis for the City's assertion that the rule was not applicable to its certification request, we cannot conclude that a construction of the rule as prohibiting municipal corporations from seeking certification is "plainly erroneous or inconsistent with the plain language of the rule." *See In re Keller*, 357 S.W.3d 413, 426-27 (Tex. Spec. Ct. Rev. 2010) (explaining how courts review agency's construction of its own rule).

Moreover, the City's interpretation that municipal corporations are excused from the obligations of the rule is inconsistent with the legislature's decision to exclude municipal corporations from various provisions of the Utilities Code. *See, e.g.*, Tex. Util. Code § 11.003(7) (excluding municipal corporations from provisions of Code pertaining to corporations). In other words, if the legislature has evidenced its intent to entirely preclude municipal corporations from participation in certain respects, we can see no reason to conclude that municipal corporations would be entitled to less administrative oversight than entities not subject to that type of exclusion.

8

an ambiguous statute that it is charged with enforcing provided that the construction is reasonable and "in accord with the plain language of the statute." *See Texas Citizens*, 336 S.W.3d at 625; *see also Steering Comms. v. Public Util. Comm'n*, 42 S.W.3d 296, 304 (Tex. App.—Austin 2001, no pet.) (noting that courts do not determine policy and that agency's policy need only reflect legitimate position). The Commission's construction of the governing statutes is reasonable and not inconsistent with the governing statutes, particularly in light of the legislature's decision to exclude municipal corporations from the definition of corporation.[3] *See* Tex. Util. Code § 11.003(7).

In addition to arguing that the Commission's denial is inconsistent with the governing statutes, the City contends that the Commission's decision is also contrary to a prior opinion by this Court. *See Steering Comms.*, 42 S.W.3d 296. When making this argument, the City contends that it only sought to be certified to provide electricity to itself and did not seek permission to sell electricity to the public. Moreover, the City urges that in our prior case we determined that municipal corporations may provide themselves with electric power. Accordingly, the City insists that the Commission's decision to deny the City's application is inconsistent with our prior determination.

---

[3] The City contends that deference to the Commission's interpretation is not warranted in these circumstances because defining what constitutes a person does not involve a question of agency expertise. *See Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.) (explaining that courts do not defer to administrative interpretation regarding questions not lying within agency's expertise or dealing with nontechnical legal question).

Although there are indeed circumstances in which a determination regarding who or what may qualify as a "person" will not turn on matters falling within an agency's area of expertise, we do not believe that a determination regarding what types of entities may be certified as retail electric providers in the electricity marketplace in the face of an ambiguous statutory scheme qualifies as one of those circumstances. *See Railroad Comm'n v. Coppock*, 215 S.W.3d 559, 563 (Tex. App.—Austin 2007, pet. denied) (explaining that agency deference is particularly warranted where "statute involves a complex subject matter").

For the reasons that follow, we believe that the City's reliance on *Steering Committees* is misplaced. In the prior case, various cities who were aggregators of electricity challenged a rule by the Commission. 42 S.W.3d at 299-300. Under the Utilities Code, aggregators are persons who join customers together for the purpose of negotiating a purchase price for electricity, but they are not allowed to "sell or take title to electricity" and are not "[r]etail electric providers." Tex. Util Code § 39.353(b). The Commission promulgated a rule regarding the certification and registration of aggregators, and the rule explained that municipal aggregators may not purchase electricity for resale to their citizens. *Steering Comms.*, 42 S.W.3d at 299; *see* 16 Tex. Admin. Code § 25.111(d)(4)(C) (2013) (Pub. Util. Comm'n, Registration of Aggregators). The cities challenged the "prohibition on their ability to resell electricity to their citizens." *Steering Comms.*, 42 S.W.3d at 299. In challenging the rule, the cities contended that the governing statutory framework prohibited privately owned aggregators from purchasing electricity but did not impose that same prohibition on public aggregators, like the cities. *Id.* at 300.

Under the Utilities Code provisions at issue in *Steering Committees*, municipal aggregators and political subdivision aggregators are required to register with the Commission as aggregators. Tex. Util. Code §§ 39.354, .3545. Moreover, the Local Government Code allows political subdivisions, including municipalities, to join with other political subdivisions to "form a political subdivision corporation or corporations to act as an agent to negotiate the purchase of electricity, or to likewise aid or act on behalf of the political subdivisions . . ., with respect to their own electricity use for their respective public facilities." Tex. Loc. Gov't Code § 304.001(a), (b). Further, the provision authorizes a "political subdivision corporation" to negotiate on behalf of its

10

members and "purchase electricity." *Id.* § 304.001(d). Another provision of the Code, entitled Aggregation by Political Subdivision for Citizens, allows a political subdivision to "negotiate for the purchase of electricity and energy services on behalf of its citizens." *Id.* § 304.002(a).

In resolving the issue on appeal in *Steering Committees*, this Court determined that the power to purchase electricity for use in public facilities found in the provision allowing political subdivisions to join with other political subdivisions and form a corporation to act as their agent, *id.* § 304.001, cannot be read into the other provision allowing political subdivisions to act as aggregators on behalf of its citizens, *id.* § 304.002. *Steering Comms.*, 42 S.W.3d at 302. Further, we determined that the Commission's interpretation of the provision authorizing the purchase of power "as a narrow exception to the general rule that aggregators may not purchase electricity" was a reasonable construction of all of the statutes at issue. *Id.*

Although there is language in the prior opinion that might suggest that municipalities may purchase electricity for their own needs, that was not the central dispute in the case. On the contrary, the dispute in the case centered on the propriety of a rule by the Commission prohibiting municipalities that are aggregators from purchasing electricity to resell to their citizens. *Id.* at 298-300. Accordingly, any comment on the ability of a municipality to purchase electricity for its own needs would simply be dicta. *See Travelers Indem. Co. v. Fuller*, 892 S.W.2d 848, 852 n.3 (Tex. 1995) (explaining that dicta is mere expression of opinion on issue not necessarily involved in case and does not create binding precedent). Moreover, although we need not decide the matter here, we note that it is not entirely clear that the statutes at issue in *Steering Committees* actually do authorize a municipality to directly purchase electricity for its own use. By their terms, the provisions allow

11

political subdivisions, including municipalities, to join and "form a political subdivision corporation" that will act as an agent for the political subdivisions, and it is the *agent* that has the authority to negotiate the terms for purchasing electricity and to purchase electricity "for use in the public facilities of the political subdivision." Tex. Loc. Gov't Code § 304.001(a), (b), (d). In any event, the issue that we are confronted with in the current case is whether a different rule by the Commission prohibits municipal corporations from being certified as retail electric providers.

In a related set of arguments, the City contends that in a footnote in *Steering Committees*, this Court rejected the idea that a municipal corporation does not qualify as a "person" under the Utilities Code. 42 S.W.3d at 303 n.9. In that case, the cities asserted that because they do not qualify as a person under the Utilities Code, the restriction in the Code prohibiting a person who is an aggregator from selling electricity did not apply to them. *Id.*

Rather than determine whether a municipal corporation does or does not qualify as a person under the Code, we simply concluded in the footnote that the Commission properly looked to the provisions of the Code when promulgating a rule establishing "registration requirements for aggregators." *Id.* Accordingly, we cannot agree with the City's assertion that we have already determined that a municipal corporation qualifies as a person under the statutes at issue in the current appeal.

In light of our determination that the Commission's interpretation of the various statutes is reasonable and not inconsistent with the governing framework, we must also conclude that the district court did not err when it upheld the Commission's determination that the City was not eligible to be certified as a retail electric provider and the Commission's decision to dismiss the

12

City's application for certification. For the reasons previously given, we must also disagree with the City's contention that the Commission's rule either did not apply to this case or was incorrectly applied to deny the City's certification request. Accordingly, we overrule the City's first and second issues on appeal. In light of our ruling, we also deny the City's request for mandamus relief.

## CONCLUSION

Having overruled the City's two issues on appeal and having denied its request for mandamus relief, we affirm the order of the district court.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Henson
  Justice Henson not participating

Affirmed

Filed:   January 9, 2014