# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00360-CV

**Graylin Gant, Jay Heichelheim, Stephen Holt, Sherif Saudi, and Charles Braden, Appellants**

**v.**

**Hon. Gregory W. Abbott, Kenny Koncaba, W. B. Boney, Trey Hill, Kelly K. Lovell, Henry S. Porretto, Wallace R. Hogan, Jr., Chris Henry, Derek Tracy, Clinton Schuessler, Wendy Morrison, David Manney, Jon Halvorsen, Christos Sotirelis, Mark Saunders, Scot E. Smith, Scott Mitchell, Matthew Bush, Chris Gutierrez, Michael Godnich, and David Dion, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GN-17-003229, HONORABLE DUSTIN M. HOWELL, JUDGE PRESIDING

## O P I N I O N

Appellants Graylin Gant, Jay Heichelheim, Stephen Holt, Sherif Saudi, and Charles Braden are five ship pilots licensed by the U.S. Coast Guard. They seek the ability to apply for Texas deputy branch pilot certification and branch pilot licensure in Galveston County without going through the current process, claiming that the process is unconstitutional in that it grants an impermissible monopoly to the Galveston-Texas City Pilots Association (Gal-Tex). Gal-Tex is a private pilot association made up of all of Galveston County's currently licensed branch pilots. The application process for deputy branch pilot certificates and pilot licenses is overseen by the board of pilot commissioners for Galveston County ports (the Board). *See* Tex. Transp. Code §§ 67.011 (explaining the composition of the Board), .017 (listing duties of the Board). Appellants submitted

"applications" to the Board in a form that the Board determined was incomplete, so the Board declined to consider those applications for deputy branch pilot certification or pilot licensure. In response to the Board's refusal to consider their applications, Appellants sued the five Commissioners of the Board in their individual official capacities and the Governor (collectively, the State appellees). The Galveston County ship pilots (the members of Gal-Tex) intervened. Appellants sought declaratory and injunctive relief under the Administrative Procedures Act (APA) and the Uniform Declaratory Judgments Act (UDJA) on the grounds that sections 67.033(4), 67.034(3), and 67.035 of the Texas Transportation Code violate the Monopoly Clause of the Texas Constitution and that the Board failed to adopt rules in accordance with the APA. *See* Tex. Const. art. I, § 26 ("Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed, nor shall the law of primogeniture or entailments ever be in force in this State."); Tex. Civ. Prac. & Rem. Code §§ 37.001-.011 (UDJA); Tex. Gov't Code §§ 2001.001-.902 (APA). The Governor filed a plea to the jurisdiction, and the remaining parties filed competing motions for summary judgment. The Commissioners moved for summary judgment, arguing that (1) the APA does not apply to the Board because it is not a state agency, (2) the Galveston County pilot application process does not create an unconstitutional monopoly, and (3) the court lacked jurisdiction to consider appellants' challenges to the Transportation Code because they did not sue the Board, but instead sued the Commissioners in their official capacities. The Intervenors moved for summary judgment, arguing that the Galveston County pilot application process does not create an unconstitutional monopoly. Appellants moved for summary judgment, arguing that the three challenged provisions of the Transportation Code create an unconstitutional monopoly and that the

2

Board was required to adopt rules in compliance with the APA. Appellants also moved to transfer venue to the Third Court of Appeals. Appellants' motions were denied. The Governor's plea to the jurisdiction was granted, as were the Commissioners' and Intervenors' motions for summary judgment. Appellants challenge the district court's order denying their motion for summary judgment and granting Appellees' motions. We will affirm in part and vacate and dismiss in part.

**The Galveston Act**

The First Texas Legislature enacted a statewide pilotage act, which provided that the governor appoint a five-member board of commissioners of pilots for each port whose population and circumstances warranted it. *See* Act approved Apr. 17, 1846, 1st Leg., R.S., § 2, 1846 Tex. Gen. Laws 79, 79, *reprinted in* 1 H.P.N. Gammel, *The Laws of Texas 1822-1897*, at 1385, 1385 (Austin, Gammel Book Co. 1898) (now codified at Tex. Transp. Code § 63.001). In each of the ports, the pilot boards oversee numerous aspects of pilotage, including the process for becoming a deputy branch pilot or branch pilot. *See* Tex. Transp. Code § 63.003 ("Powers and Duties of Board"). Over time, the Legislature created several port-specific acts, including the Galveston County Pilots Licensing and Regulatory Act (Galveston Act). *See id.* §§ 67.001-.083. Like the statewide pilotage act, the Galveston Act provides that the board of pilot commissioners for the port of Galveston County is composed of five commissioners appointed by the governor and it lists the Board's duties as including oversight of the process for becoming a deputy branch pilot or branch pilot. *See id.* §§ 67.011 (providing for gubernatorial appointment of five board commissioners from Galveston County), .017 (1)-(4), (13) (listing board duties relating to pilot licensing and certification).

3

Among other duties imposed by the Galveston Act, the Board must (1) "recommend to the governor the number of pilots necessary to serve each Galveston County port," (2) "accept applications for deputy branch pilot certificates or pilot licenses and determine whether each applicant is qualified," (3) "provide names of qualified applicants for certificates to each pilot association office of Galveston County," (4) "submit to the governor the names of persons who have qualified under this chapter to be appointed as branch pilots," and (5) "approve a training program for deputy branch pilots." *Id.* § 67.017(1)-(4), (13). A person seeking to become a deputy branch pilot or branch pilot must meet certain eligibility requirements and "must give to the board a written application in the form and manner required by board rule." *Id.* § 67.035; *see id.* §§ 67.033 (qualifications for branch pilot license), .034 (qualifications for deputy branch pilot certificate). In considering applications for certificates and licenses, the Board "may examine and decide on the qualifications of an applicant for the position of branch pilot or deputy branch pilot." *Id.* § 67.036. Applicants selected for branch pilot licensure by the Board must file a bond and oath, after which "the board shall certify to the governor that a person licensed as a branch pilot has qualified." *Id.* § 67.037(a); *see id.* § 67.039 (bond and oath requirements). Then, "[o]n receipt of the board's certification, the governor shall issue to the person . . . a commission to serve as a branch pilot to and from Galveston County ports." *Id.* § 67.037(b). Unlike branch pilots, who are chosen by the Board and commissioned by the Governor, deputy branch pilots are appointed by currently licensed branch pilots. *Id.* § 67.038.

4

**Gal-Tex**

The parties agree that every Galveston County branch pilot belongs to Gal-Tex and that Gal-Tex is involved in the application process for deputy branch pilots and branch pilots. The Board relies on Gal-Tex to let the Board know when additional deputy branch pilots or branch pilots are needed. Gal-Tex then publishes notice that the Board is accepting applications for deputy branch pilot certification or branch pilot licensure. The letter sent to applicants along with the application for deputy branch pilot certification opens by saying, "The Galveston-Texas City Pilots appreciate your interest in becoming a deputy branch pilot with this organization," and includes a list of Gal-Tex's requirements for applicants that are separate from the statutory requirements. These requirements are: (1) an applicant must be licensed by the United States Coast Guard (USCG), (2) depending on the type of USCG license, the applicant may be required to also document a certain number of hours of qualifying service, (3) all applicants must have sailed on the qualifying USCG license for a minimum of 900 days, and (4) "[n]o candidate may be related to any branch pilot currently serving with the Galveston-Texas City Pilots." Although the application does not mention Gal-Tex, an attached release authorizes both the Board and Gal-Tex to investigate statements made on the application; perform a background check on the applicant, including obtaining a credit report, a criminal record check and a Marine Index Bureau Report; contact former employers; and obtain copies of Coast Guard records. The applicant's signature on this form would also release the Board and Gal-Tex from "any and all claims" related to any investigation performed relating to the application. By its own terms, the application for deputy branch pilot certification must be sent to the Board. After the Board reviews the applications, it forwards to Gal-Tex the applications that are

5

approved for candidacy as prospective deputy branch pilots. The members of Gal-Tex will offer interviews to all applicants found qualified by the Board and will then select the required number of deputy branch pilots. Once the application cycle is closed, Gal-Tex informs the Board of the selected applicants and the results of each applicant's background check, physical examination, and drug screen.

**The Challenged Statutory Provisions**

Section 67.033 of the Galveston Act sets out the statutory requirements of eligibility for branch pilots. The portions relevant here provide that "[t]o be eligible for a license as a branch pilot, a person must . . . have at least two years' service as a deputy branch pilot and successfully complete the board-approved training program," and "[t]o be eligible for a certificate as a deputy branch pilot, a person must . . . be appointed by a branch pilot." *Id.* §§ 67.033(4), .034(3). Appellants argue that these statutory requirements grant an unconstitutional monopoly to Gal-Tex because, since every branch pilot is a member of Gal-Tex, no one can become a deputy branch pilot without being appointed by a member of Gal-Tex, and no one can go on to become a branch pilot without having first been appointed a deputy branch pilot by a member of Gal-Tex. They challenge these provisions as facially unconstitutional. In addition, Appellants bring an as-applied challenge to the requirement that "[t]o apply for a branch pilot's license or a deputy branch pilot's certificate, a person must give to the board a written application in the form and manner required by board rule." Furthermore, Appellants specifically complain that the Governor and the Board are required to adopt rules under the APA that would permit Appellants to apply for deputy branch pilot certification or branch pilot licensure without granting an unconstitutional monopoly, that is, without Gal-Tex's

involvement. We will first address the Governor's plea to the jurisdiction before turning to the statutory challenges.

**Governor's Plea to the Jurisdiction**

Our jurisdiction over the merits of this case extends no further than the jurisdiction possessed by the district court. *See Pearson v. State*, 315 S.W.2d 935, 938 (Tex. 1958). We review de novo a trial court's ruling on a plea to the jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We begin by analyzing the plaintiff's live pleadings to determine whether the plaintiff has met the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe the pleadings liberally, taking them as true, and look to the pleader's intent. *Id.*; *Texas Logos, L.P. v. Brinkmeyer*, 254 S.W.3d 644, 659 (Tex. App.—Austin 2008, no pet.). Mere unsupported legal conclusions are insufficient. *See Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 515-16 & nn.7 & 8 (Tex. App.—Austin 2010, no pet.). If the pleadings fail to allege sufficient facts to affirmatively demonstrate the trial court's jurisdiction but also fail to affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226-27. If, on the other hand, the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227. A plaintiff suing the State must establish a waiver of sovereign immunity. *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). "Otherwise, sovereign immunity from suit defeats a

7

trial court's subject-matter jurisdiction." *Id.* Sovereign immunity does not shield the state from ultra vires claims seeking to prevent government officials from exceeding their statutory or constitutional authority. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

The APA contains a waiver of sovereign immunity to the extent of creating a cause of action for declaratory relief regarding the validity or applicability of a "rule." Tex. Gov't Code § 2001.038(a); *see Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 123 (Tex. App.—Austin 2007, no pet.) ("section 2001.038 is a grant of original jurisdiction and, moreover, waives sovereign immunity"). Under the APA, a "rule" is "a state agency statement of general applicability that: (i) implements, interprets, or prescribes law or policy; or (ii) describes the procedure or practice requirements of a state agency." Tex. Gov't Code § 2001.003(6). When no rule is being challenged, a claimant cannot obtain declaratory relief under the APA against the State, its agencies, or its agents because sovereign immunity bars the cause of action. *Slay v. Texas Comm'n on Envtl. Quality*, 351 S.W.3d 532, 545 (Tex. App.—Austin 2011, pet. denied).

The Galveston Act assigns rulemaking authority to the Board, not the Governor, through its general grant of rulemaking authority: "The board may adopt rules to carry out this chapter." Tex. Transp. Code § 67.016(b). This is the only rulemaking provision that applies to the challenged statutory provisions in this case. Unlike the general grant of rulemaking authority, the Galveston Act's other rulemaking provisions are mandatory and relate to the work of already-licensed pilots, though they also apply solely to the Board. *See id.* §§ 67.017(10), .070(d). In addition to providing an independent grant of rulemaking authority, the Galveston Act provides notice requirements for when the Board adopts a rule. *See id.* § 67.021.

8

Appellants do not argue that the Board failed to comply with the Galveston Act's rulemaking provisions. Further, Appellants concede that the Board, which lacks statewide jurisdiction, is not a "state agency" under the APA. *See* Tex. Gov't Code § 2001.003(7) (defining "state agency" as agency with "statewide" jurisdiction); Tex. Transp. Code § 67.015 (giving Board "jurisdiction over the piloting of vessels in Galveston County, including intermediate stops and landing places for vessels on navigable streams wholly or partially located in the board's jurisdiction"). As Appellants have observed, because the Board is not a state agency, it is not subject to the APA or its rulemaking requirements. *See Fort Worth & W. R.R. Co. v. Enbridge Gathering (NE Texas Liquids), L.P.*, 298 S.W.3d 392, 397 (Tex. App.—Fort Worth 2009, no pet.) (holding that an entity that lacked statewide jurisdiction is not a "state agency" within the meaning of the APA and was therefore not required to follow APA procedures by appealing to the State Office of Administrative Hearings before filing condemnation proceedings in the trial court). Despite the Galveston Act's independent rulemaking framework assigning rulemaking authority to the Board, Appellants argue that the Governor is the state agency that should be responsible for adopting rules for deputy branch pilot certification and branch pilot licensure because the Governor appoints the Board. *See* Tex. Transp. Code § 67.011 (Board members are "appointed by the governor with the advice and consent of the senate"). Appellants argue that because the application process adopted by the Board necessarily involves Gal-Tex, the Governor was required, but failed, to adopt rules under the APA that would have provided an application process that did not involve Gal-Tex. However, the Governor's responsibilities under the Galveston Act are limited. In addition to appointing the Board, the Governor has a duty to commission branch pilots that the Board certifies

as qualified. *Id.* § 67.037(b). Based on the Board's recommendation, the Governor "shall appoint the number of branch pilots necessary to provide adequate pilot services for each Galveston County port." *Id.* § 67.037(c), *see id.* § 67.017(1) (Board shall recommend the number of pilots necessary). The Galveston Act does not contemplate the Governor making any rules for certification or licensure. Appellants nonetheless urge that the Governor should have promulgated rules under the APA to allow for certification or licensure outside of the current method that they allege violates the constitution by creating an unconstitutional monopoly.

We conclude Appellants are not challenging any "rule" within the meaning of the APA; the procedures to which they object are promulgated by the Board (not a state agency) and affect the interests of applicants for certification or licensure in Galveston County, rather than being "generally applicable." *See El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 714 (Tex. 2008) ("The term 'general applicability' under the APA references 'statements that affect the interest of the public at large such that they cannot be given the effect of law without public input.'" (*quoting Railroad Comm'n of Tex. v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003))). Appellants instead challenge the Governor's alleged failure to promulgate unspecified "rules" in the face of a statute that expressly delegates rulemaking to an entity other than the Governor. *See* Tex. Transp. Code § 67.016(b). By its own terms, the APA does not apply to this scenario. *See* Tex. Gov't Code §§ 2001.003(6)-(7), .038; *cf. Texas Comm'n on Envtl. Quality v. Bonser-Lain*, 438 S.W.3d 887, 894 (Tex. App.—Austin 2014, no pet.) ("the APA does not provide a right to judicial review of an agency's refusal to adopt rules"). We affirm the district court's grant of the Governor's plea to the jurisdiction.

**Claims Against the Commissioners**

Appellants' remaining claims are against the Board's individual Commissioners. As discussed above, because the Board is not subject to the APA, Appellants cannot pursue any claims against the Commissioners through the APA. *See* Tex. Gov't Code §§ 2001.003(7) (defining "state agency" under the APA as an agency with "statewide" jurisdiction), .038(a) (creating a cause of action for declaratory relief regarding the validity or applicability of an APA "rule"); Tex. Transp. Code § 67.015 (Board's jurisdiction). We therefore turn to Appellants' UDJA claims challenging the validity of sections 67.033(4), 67.034(3), and 67.035 of the Transportation Code.

Appellants, the Commissioners, and the Intervenors each moved for summary judgment. The district court denied Appellants' motion and granted the others. Summary judgment is proper if the movant establishes that there are no genuine issues of material fact and that the movant is entitled to summary judgment as a matter of law. Tex. R. Civ. P. 166a(c). We review de novo the trial court's summary-judgment rulings. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, the parties seek summary judgment on overlapping issues and the trial court grants one motion and denies the others, we consider all of the summary-judgment evidence and issues presented and, if the trial court erred, render the judgment the trial court should have rendered. *Id.*

Appellants seek declarations that sections 67.033(4) and 67.034(3) are facially invalid and that section 67.035 is invalid as applied under Article I, section 26, of the Texas Constitution. The UDJA generally does not enlarge a trial court's jurisdiction, and a request for declaratory relief does not alter a suit's underlying nature. *Heinrich*, 284 S.W.3d at 370. "While the DJA waives

11

sovereign immunity for certain claims, it is not a general waiver of sovereign immunity." *Id.* at 388. "Consequently, sovereign immunity will bar an otherwise proper DJA claim that has the effect of establishing a right to relief against the State for which the Legislature has not waived sovereign immunity." *Id.* "For claims challenging the validity of ordinances or statutes, however, the Declaratory Judgment Act requires that the relevant governmental entities be made parties, and thereby waives immunity." *Id.* at 373 n.6 (citing Tex. Civ. Prac. & Rem. Code § 37.006(b) ("In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.")); *see Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994) ("The DJA expressly provides that persons may challenge ordinances or statutes, and that governmental entities must be joined or notified. . . . The Act thus contemplates that governmental entities may be—indeed, must be—joined in suits to construe their legislative pronouncements."); *see also Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633, 634 & n.4 (Tex. 2010) (construing *Leeper* to say that "because the DJA permits statutory challenges and governmental entities may be bound by those challenges, the DJA contemplates entities must be joined in those suits"; "when the *validity* of ordinances or statutes is challenged, the DJA waives immunity to the extent it requires relevant governmental entities be made parties" (emphasis in original)).

Although Appellants have sued the Commissioners in their official capacities, they have not sued the Board. Other than an assertion that the Commissioners failed to promulgate any

12

rule in accordance with the APA, which does not apply to the Board, Appellants have not alleged an ultra vires act by the Commissioners. Appellants' UDJA claims challenge as unconstitutional statutory provisions governing the application process for deputy branch pilot certification and branch pilot licensure. If Appellants were to succeed, the result would impact the Board's procedures for accepting applications. Under the circumstances, the Board was required to be a party to this suit. *See Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 76 (Tex. 2015) (noting that recent Texas Supreme Court precedents stand for the principle that when the constitutionality of a statute is at issue, state entities must be parties to UDJA challenges); *DeQueen*, 325 S.W.3d at 633, 634 & n.4 (the UDJA contemplates entities must be joined in suits challenging the validity of a statute). Because the Board is not a party, the UDJA's limited waiver of immunity does not apply. The district court therefore lacked jurisdiction to address the merits of Appellants' claims under the UDJA.

**Conclusion**

We conclude that Appellants have failed to affirmatively allege facts that invoke the district court's jurisdiction. We are not aware of any way they could cure these jurisdictional defects through repleading. Accordingly, we affirm the district court's grant of the Governor's plea to the jurisdiction and the grant of the Commissioners' motion for summary judgment on the grounds that the court lacked jurisdiction, and we vacate the district court's grant of the Intervenors' summary-judgment motion and dismiss Appellants' suit for want of jurisdiction.

13

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed in Part, Vacated and Dismissed in Part

Filed:   April 24, 2019